STATE of Iowa, Appellee,

v.

James J. HENSLEY, III, Appellant.

No. 93–1538.

Supreme Court of Iowa.

July 19, 1995.

Linda Del Gallo, State Appellate Defender, and Annette L. Hitchcock, Asst. Appellate Defender, for appellant.

Thomas J. Miller, Atty. Gen., Richard K. Bennett and Julie Brown, Asst. Attys. Gen., and Kevin Parker, County Atty., for appellee.

Considered by McGIVERIN, C.J., and LARSON, CARTER, NEUMAN, and TERNUS, JJ.

McGIVERIN, Chief Justice.

Defendant James J. Hensley, III seeks further review of the court of appeals decision affirming his conviction, following a jury trial, of second-degree theft in violation of Iowa Code sections 714.1(4) and 714.2(2) (1993). Defendant argues that: (1) the trial court erred in admitting into evidence his statements allegedly obtained in violation of his right to counsel under the United States and Iowa Constitutions; and (2) the evidence was insufficient to support his conviction. Like the court of appeals, we conclude that the trial court erred in admitting into evidence defendant's statements because they were obtained in violation of his right to counsel, but that the erroneous admission was harmless beyond a reasonable doubt. We also conclude that the evidence in support of the conviction was not only substantial but overwhelming. Accordingly, we affirm the court of appeals decision and the judgment of the district court.

I. *Background facts and proceedings.*

On May 14, 1993, sheriff's deputy Roger Lettington was dispatched with respect to an outstanding arrest warrant for the defendant James J. Hensley, III.[1] Upon nearing an intersection, deputy Lettington observed defendant and defendant's friend, Robert Krebs, leaning on a motorcycle that was sitting in the intersection. As deputy Lettington approached, defendant and Krebs began to rapidly walk away, with Krebs pushing the motorcycle. Deputy Lettington ordered them to stop, and the two returned to his patrol car.

At this time, deputy Lettington noticed that the ignition of the motorcycle had been altered and that the motorcycle did not have a license plate. Deputy Lettington then called for back-up. As he did so, defendant fled and Krebs attempted to push the motorcycle to his residence. A subsequent check on the vehicle identification number revealed that the motorcycle was stolen. Following an investigation, defendant was arrested and charged with second-degree theft of the motorcycle. *See* Iowa Code §§ 714.1(4), 714.2(2).

At his initial appearance on June 12, 1993, defendant Hensley requested counsel. He completed an application for appointment of counsel and returned it to the jailer. On June 14, the clerk of court technician received the application and the judge approved it, appointing counsel to represent Hensley. The technician made a docket entry on June 15 that Hensley was appointed counsel.

Later on June 15, deputy Lettington visited Hensley at the county jail. He informed Hensley of his *Miranda* rights and asked him if he had spoken with an attorney regarding the theft charge. Hensley replied he had requested an attorney. At this time,

---

1. The warrant was unrelated to the conviction now at issue on appeal.

neither Hensley nor deputy Lettington knew that the judge had appointed counsel to represent defendant.

Lettington then questioned defendant about whether he knew that the motorcycle was stolen. At trial, deputy Lettington testified as to defendant's responses as follows:

Q: And did you [deputy Lettington] ask Mr. Hensley whether or not he knew it was stolen?

A: I asked him that, yes.

Q: And what was his response to you?

A: He stated that—during the questioning I asked him if he felt due to the fact that the motorcycle's ignition switch had been tampered with and the license plate was missing [he] felt it was stolen, and he stated that he felt it was stolen, yes.

Q: [Did] Mr. Hensley indicate to you where he thought the motorcycle came from?

A: He indicated that he had no idea where it came from. He stated that he felt it was probably stolen. However, he indicated that he wasn't—wasn't the one who actually stole it.

Through several motions, defendant sought to suppress these statements he had made to deputy Lettington at the jail. He argued that at the time of the questioning his constitutional right to counsel had attached, and that the questioning violated that right. Defendant's motions were denied, and the State presented the statements to the jury during trial. The jury returned a verdict of second-degree theft, and the district court entered judgment and sentence upon the verdict.

Defendant appealed, arguing that: (1) the trial court erred in admitting into evidence his statements to deputy Lettington allegedly obtained in violation of his rights guaranteed by the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and by article I, section 10 of the Iowa Constitution; and (2) the evidence was insufficient to support his conviction of second-degree theft.

The State countered, arguing that even though defendant's statements to deputy Lettington were obtained after his constitutional right to counsel had attached and therefore improperly admitted at trial, the error was harmless. The State also argues that, besides defendant's statements, it presented overwhelming evidence for the jury to conclude beyond a reasonable doubt that defendant is guilty of second-degree theft.

Agreeing with the State, the court of appeals affirmed defendant's conviction.

We granted defendant's application for further review. *See id.* § 602.5106(2).

II. *Harmlessness of the admission of defendant's statements obtained in violation of his constitutional right to counsel.*

■ Defendant's main contention on appeal is that his conviction was based on statements obtained in violation of his right to counsel under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and article I, section 10 of the Iowa Constitution. Based upon our de novo review of the totality of the circumstances as shown by the entire record, *see State v. Cook,* 530 N.W.2d 728, 731 (Iowa 1995), we conclude that defendant's Sixth Amendment right to counsel was violated[2], but that the court's erroneous admission into evidence of statements obtained in violation of that right was harmless beyond a reasonable doubt.

A. *The elements of second-degree theft.* Defendant was charged with and later convicted of second-degree theft in violation of Iowa Code sections 714.1(4) and 714.2(2). Section 714.1(4) defines theft as "[e]xercis[ing] control over stolen property, knowing such property to have been stolen, or having reasonable cause to believe that such property has been stolen."

■ In order to prove defendant guilty of theft of the motorcycle under this section, the State was required to establish beyond a reasonable doubt that the motorcycle was stolen, that the defendant possessed or exercised control over it, and that at the time he exercised such control, he knew or had reasonable cause to believe that the motorcycle

---

2. Because we find a violation of defendant's Sixth Amendment right to counsel, we do not address defendant's assertion that his Fifth Amendment right to counsel was also violated.

was stolen. Iowa Code § 714.1(4); *State v. Robinson*, 288 N.W.2d 337, 338–40 (Iowa 1980).

As part of its proof regarding the third element, whether defendant *knew or had reasonable cause to believe* that the motorcycle was stolen, the State offered statements defendant made to deputy Lettington that he "felt the motorcycle was stolen." Defendant contends that these statements were obtained after his constitutional right to counsel had attached, that counsel was not present when he made the statements, and therefore that the trial court's failure to suppress these statements requires reversal of his conviction.

We examine each of defendant's arguments in turn, setting forth additional facts when necessary.

■■■ B. *Attachment and violation of Sixth Amendment and state constitutional right to counsel.* The Sixth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, and article I, section 10 of the Iowa Constitution guarantee an accused the right to have the effective assistance of counsel for the accused's defense. *Gideon v. Wainwright*, 372 U.S. 335, 342–43, 83 S.Ct. 792, 795–96, 9 L.Ed.2d 799, 804 (1963); *State v. Lowder*, 256 Iowa 853, 859–60, 129 N.W.2d 11, 15 (1964), *cert. denied*, 380 U.S. 965, 85 S.Ct. 1110, 14 L.Ed.2d 155 (1965); *State v. Aldape*, 307 N.W.2d 32, 41 n. 4 (Iowa 1981).[3] This constitutional right to counsel attaches at or after the initiation of adversary proceedings against the defendant, whether by way of formal charge, preliminary hearing, indictment, information, or arraignment. *United States v. Gouveia*, 467 U.S. 180, 187, 104 S.Ct. 2292, 2295–96, 81 L.Ed.2d 146, 153 (1984); *Kirby v. Illinois*, 406 U.S. 682, 689, 92 S.Ct. 1877, 1882, 32 L.Ed.2d 411, 417 (1972); *State v. Evans*, 495 N.W.2d 760, 764 (Iowa 1993). A formal charge may include the filing of a complaint and procuring of a warrant prior to the filing of a trial information or indictment, depending, in part, on the level of prosecutorial involvement. *Evans*, 495 N.W.2d at 764–65 (citing *State v. Jack-*

*son*, 380 N.W.2d 420, 423 (Iowa 1986); *State v. Johnson*, 318 N.W.2d 417, 432–35 (Iowa), *cert. denied*, 459 U.S. 848, 103 S.Ct. 106, 74 L.Ed.2d 95 (1982)).

■■■ The State concedes that defendant's Sixth Amendment and Iowa constitutional right to counsel had attached by the time deputy Lettington questioned defendant on June 15 and therefore was violated. With the State's concession, no purpose would be served by further analysis of the scope or application of the Sixth Amendment right to counsel. We conclude that defendant's right to counsel had attached when deputy Lettington questioned him and that defendant was not represented by counsel during the questioning. We therefore agree with the court of appeals ruling that his Sixth Amendment and Iowa constitutional right to counsel was violated and his statements to the deputy should have been suppressed. *See Michigan v. Jackson*, 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986).

C. *Constitutional violation harmless error.* Our conclusion that defendant's statements should have been suppressed does not end the enquiry because not all constitutional violations amount to reversible error. The State urges that the erroneous admission of evidence was harmless beyond a reasonable doubt. The court of appeals agreed with the State, and so do we.

■■■ 1. *Harmless error analysis applicable.* Most constitutional errors do not automatically require reversal of a conviction if the error is harmless. *Arizona v. Fulminante*, 499 U.S. 279, 306, 111 S.Ct. 1246, 1263, 113 L.Ed.2d 302, 329 (1991) (citing *Chapman v. California*, 386 U.S. 18, 23, 87 S.Ct. 824, 827, 17 L.Ed.2d 705, 709 (1967)); *State v. Lanphear*, 220 N.W.2d 618, 622 (Iowa 1974). The erroneous admission of evidence in violation of a defendant's Sixth Amendment right to counsel is such a constitutional error subject to harmless error analysis. *Satterwhite v. Texas*, 486 U.S. 249, 258, 108 S.Ct. 1792, 1798, 100 L.Ed.2d 284, 295 (1988) (holding admission of evidence at the

---

**3.** We interpret the Iowa constitutional provision the same as the Sixth Amendment regarding the right to counsel. *See State v. Davis*, 304 N.W.2d 432, 434 (Iowa 1981).

sentencing stage of a capital case in violation of the Sixth Amendment Counsel Clause may be harmless error); *Moore v. Illinois,* 434 U.S. 220, 232, 98 S.Ct. 458, 466, 54 L.Ed.2d 424, 436 (1977) (remanding case for determination of whether failure to exclude evidence obtained in violation of Sixth Amendment Counsel Clause was harmless constitutional error); *Milton v. Wainwright,* 407 U.S. 371, 377–78, 92 S.Ct. 2174, 2178, 33 L.Ed.2d 1, 6–7 (1972) (holding use of confession allegedly obtained in violation of defendant's Sixth Amendment right harmless error). The basis for holding Sixth Amendment Counsel Clause violations amenable to harmless error analysis is that such errors "no less than other errors, may have been 'harmless' in terms of their effect on the factfinding process at trial." *See Delaware v. Van Arsdall,* 475 U.S. 673, 681; 106 S.Ct. 1431, 1436, 89 L.Ed.2d 674, 684 (1986).

■ *2. Two-part harmless error test applied.* In order to declare admission of a statement obtained in violation of a defendant's Sixth Amendment right to counsel harmless, the state must "prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Chapman,* 386 U.S. at 24, 87 S.Ct. at 828, 17 L.Ed.2d at 710; *Lanphear,* 220 N.W.2d at 622; *State v. Coy,* 433 N.W.2d 714, 715 (Iowa 1988). In applying this harmless error standard and thereby determining whether the State has met its burden, in the past we have looked at whether the evidence of guilt was overwhelming or whether the disputed evidence was cumulative in nature. *State v. Freeman,* 297 N.W.2d 363, 367 (Iowa 1980). *See generally* Dick R. Schlegel, *The Evolution of Harmless Error in Iowa: Where Do We Go from Here?* 43 Drake L.Rev. 547, 586–88 (1995). However, recent United States Supreme Court decisions have given the courts specific guidance in applying the *Chapman* harmless error standard.

■ The Court has also outlined two "distinct steps" for us to follow. *Yates v. Evatt,* 500 U.S. 391, 404–05, 111 S.Ct. 1884, 1893–94, 114 L.Ed.2d 432, 449 (1991). "First, [we] must ask what evidence the jury actually considered in reaching its verdict." *Id.* In

doing so, we do "not conduct a subjective enquiry into the jurors' minds." *Id.*

"Once [we have] made the first enquiry into the evidence considered by the jury, [we] must then weigh the probative force of that evidence as against the probative force of the [incorrectly admitted evidence] standing alone." *Id.* This enquiry also "cannot be a subjective one into the jurors' minds." *Id.* We "must approach it by asking whether the force of the evidence ... is so overwhelming as to leave it beyond a reasonable doubt that the verdict resting on that evidence would have been the same in the absence of the [incorrectly admitted evidence]." *Id.* It is only when the effect of the incorrectly admitted evidence is comparatively minimal to this degree that it can be said, in *Chapman's* words, that there is no reasonable possibility that such evidence might have contributed to the conviction. *See id.; Chapman,* 386 U.S. at 24, 87 S.Ct. at 828, 17 L.Ed.2d at 710.

In performing this analysis, the Court has instructed the courts to consider:

> not what effect the constitutional error might generally be expected to have upon a reasonable jury, but rather what effect it had upon the guilty verdict in the case at hand. Harmless-error review looks ... to the basis on which 'the jury actually rested its verdict.' The inquiry, in other words, is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered but whether the guilty verdict *actually* rendered in *this* trial was surely unattributable to the error. That must be so, because to hypothesize a guilty verdict that was never in fact rendered— no matter how inescapable the findings to support that verdict might be—would violate the jury-trial guarantee.

*Sullivan v. Louisiana,* 508 U.S. ——, ——, 113 S.Ct. 2078, 2081–82, 124 L.Ed.2d 182, 189 (1993) (citations omitted).

a. *Evidence jury actually considered.* Turning to the first enquiry, we must examine the evidence the jury actually considered in reaching its verdict. In this case, the issue surrounds the knowledge element of second-degree theft—that at the time defendant exercised control over the stolen motorcycle defendant *knew or had reasonable*

*cause to believe* that the motorcycle was stolen. *See* Iowa Code § 714.1(4). To prove defendant guilty of theft under Iowa Code section 714.1(4), the State, among other things, had to prove beyond a reasonable doubt "that [Hensley] actually did believe that the [motorcycle] was stolen." *See State v. Hutt,* 330 N.W.2d 788, 790 (Iowa 1983); *Robinson,* 288 N.W.2d at 338–40.

Besides defendant's statements to deputy Lettington, the State presented circumstantial evidence showing that defendant actually believed that the motorcycle was stolen. This evidence, as revealed by the record, includes:

(1) Two witnesses, including Krebs, and deputy Lettington observed defendant in possession of a motorcycle which did not have a license plate and had an ignition which had been damaged, allowing its operation without a key.

(2) Three witnesses, including Krebs, testified as to defendant's use of the motorcycle as an operator and/or passenger.

(3) Two witnesses, including Krebs, testified as to defendant's statements that the motorcycle had been borrowed.

(4) One witness testified defendant had told her to "mind her own business" when she asked from whom the motorcycle had been borrowed.

(5) One witness testified defendant had told her he and Krebs had thrown the motorcycle's license plate onto the roof of a shopping mall.

(6) Police recovered the motorcycle's license plate from the roof of a shopping mall.

(7) Although defendant had told others the motorcycle was borrowed, one witness testified he had had a telephone conversation with defendant and Krebs in which defendant indicated he had a motorcycle for sale.

(8) Defendant fled the scene after deputy Lettington had stopped defendant and Krebs, and noticed the damaged ignition and missing license plate on the vehicle.

■ b. *Probative force of evidence jury actually considered weighed against probative force of defendant's erroneously admit-* *ted statements.* Against this circumstantial evidence of defendant's actual belief that the motorcycle was stolen are defendant's statements to deputy Lettington which, taken together, comprise an admission by defendant that he "felt the motorcycle was stolen." Upon weighing the probative force of the two categories of evidence, we conclude that the defendant's "admission" is so unimportant in relation to everything else the jury considered that there is no reasonable possibility it contributed to his conviction.

The statements to deputy Lettington are both weak and contradictive. Defendant did not tell deputy Lettington that he *knew or actually believed* that the motorcycle had been stolen; he only stated that he "*felt* it was *probably* stolen." He then stated that "he had no idea where it came from," and that he "wasn't the one who actually stole it."

■ On the other hand, the State's circumstantial proof forcefully shows that defendant actually believed that the motorcycle was stolen. The circumstantial evidence includes the altered ignition, the missing license plate, and defendant's suspicious statements and fleeting actions. We believe that this evidence of defendant's actual belief that the motorcycle was stolen is so overwhelming as to leave it beyond a reasonable doubt that the jury's verdict resting on that evidence would have been the same in the absence of the court's admission of defendant's statements. Accordingly, we agree with the court of appeals decision holding admission of the statements obtained in violation of defendant's Sixth Amendment and Iowa constitutional right to counsel harmless error.

III. *Sufficiency of the evidence.* Having concluded that there was overwhelming evidence of second-degree theft of which defendant was convicted, we find that defendant's second argument on appeal, that there was insufficient evidence to support a guilty verdict, lacks merit. Considering the evidence in the light most favorable to the State, *see Robinson,* 288 N.W.2d at 338, the same evidence provided by the State to prove defendant's guilty knowledge is at least substantial evidence of the other elements of second-degree theft and, thus, the conviction.

DECISION OF COURT OF APPEALS AND JUDGMENT OF DISTRICT COURT AFFIRMED.