# IN THE SUPREME COURT OF IOWA

No. 07–0452

Filed February 20, 2009

**STATE OF IOWA,**

Appellee,

vs.

**VINCENT FITZGERALD WALLS,**

Appellant.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Polk County, Eliza J. Ovrom, Judge.

Defendant appeals his criminal convictions contending the district court erred in denying his motion to suppress testimony obtained in violation of his Fifth Amendment rights, and the admission of this testimony at trial was not harmless beyond a reasonable doubt. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED AND REMANDED.**

Thomas J. Miller, Attorney General, Karen Doland, Assistant Attorney General, John P. Sarcone, County Attorney, and Jeff Noble and Susan Cox, Assistant County Attorneys, for appellee.

Mark C. Smith, State Appellate Defender, and Shellie L. Knipfer, Assistant Appellate Defender, and Vincent Walls, pro se, Anamosa, for appellant.

**BAKER, Justice.**

A jury convicted the defendant, Vincent Walls, of sexual abuse in the first degree in violation of Iowa Code sections 709.1 and 709.2, sexual abuse in the second degree in violation of Iowa Code sections 709.1 and 709.3, willful injury causing serious injury in violation of Iowa Code section 708.4(1), and kidnapping in the second degree in violation of Iowa Code sections 902.9 and 902.3 (2004). Walls appealed these convictions, contending the interrogating officer failed to honor his request for counsel in violation of his Fifth Amendment right against self-incrimination and his right to counsel, and therefore, the district court erred in denying his motion to suppress the evidence obtained during this interrogation. We transferred this case to the court of appeals, which determined that the district court should have suppressed the defendant's statements but that any error in admitting them was harmless. We granted Walls' application for further review. We conclude that the district court should have suppressed Walls' statements, and the erroneous admission of those statements was not harmless beyond a reasonable doubt.

### I. Background Facts and Prior Proceedings.

Susan Lombard is a substitute teacher from Ankeny, Iowa. In 2004, Lombard was struggling with alcohol and drug addictions. On the weekend of May 5, 2004, she came to Des Moines to buy drugs. In the three days that followed, Lombard met drug dealers, loaned her car out in exchange for crack cocaine, and attended a drug party in a Des Moines hotel room. On Sunday, May 7, Lombard stumbled into the home of Nancy Pilcher bloody and disoriented. Lombard told Pilcher that she and another woman had been forcibly held against their will by a

man, and that she had been pistol-whipped for refusing his sexual advances. Responding police were unable to locate the man.

Vincent Walls was arrested by the Des Moines police and brought in for questioning regarding Lombard's assault and kidnapping. After explaining the allegations that Lombard and Cathy Riley, the other victim, had made against Walls concerning the incident, Officer Bender read Walls his *Miranda* rights and asked him to sign a waiver. Walls responded by asking if Bender could get in contact with Roger Owens, his attorney. At this point, Bender attempted to clarify Walls' request for an attorney by asking, "Is [getting in contact with him] what you're wanting me to do?" To this Walls replied, "Yeah, because I'd love to talk to you but I couldn't talk to you on that recorder."

Instead of terminating the interview, Bender continued talking, informing Walls that their conversation was being taped in order to create a record and protect the rights of both parties. After this explanation, Bender asked Walls to once again clarify his request for an attorney before Bender proceeded with the interrogation. Walls never clearly answered Bender's second request for clarification; instead, he stated, "[s]ee, and then I've got to sign this paper." Bender again proceeded with the interrogation, questioning Walls about his involvement in Lombard's kidnapping and assault.

During the interrogation that followed, Walls confessed to some of the allegations. The State subsequently charged Walls with first- and second-degree sexual abuse, second-degree kidnapping, first-degree robbery, and willful injury causing serious injury. Prior to trial, Walls' attorney moved to suppress his confession on the ground that Officer Bender continued to question Walls after he asked for an attorney. The district court denied the motion. At trial, the confession was admitted,

and the jury found Walls guilty of both counts of sex abuse, kidnapping, willful injury, and assault, a lesser included offense of robbery.

Walls appealed the jury's verdict, challenging the trial court's denial of his motion to suppress his confession. The court of appeals affirmed his conviction, concluding that the State violated Walls' Fifth Amendment right against self-incrimination but that the district court's denial of his motion to suppress was harmless error. Walls filed an application for further review with this court, requesting that his conviction be reversed and he be given a new trial. We granted further review.

## II. Scope of Review.

We review constitutional issues de novo. *State v. Peterson*, 663 N.W.2d 417, 423 (Iowa 2003). In assessing the validity of a defendant's *Miranda* waiver, the State bears the heavy burden of proving by a preponderance of the evidence that the waiver was made knowingly, intelligently, and voluntarily without intimidation, coercion, or deception. *State v. Hajtic*, 724 N.W.2d 449, 453 (Iowa 2006) (citing *State v. Morgan*, 559 N.W.2d 603, 606 (Iowa 1997)). Our review of the record is de novo, and we will make our own evaluation of the circumstances. *Id.*

## III. Fifth Amendment Violation.

The Fifth Amendment to the federal constitution provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. The Due Process Clause of the Fourteenth Amendment to the federal constitution makes this right binding on the states. *Malloy v. Hogan*, 378 U.S. 1, 6, 84, S. Ct. 1489, 1492, 12 L. Ed. 2d 653, 658 (1964). According to the United States Supreme Court's ruling in *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S. Ct. 1602, 1612, 16 L. Ed. 2d 694, 706–07 (1966), pursuant to the Fifth

Amendment, a person "taken into custody or otherwise deprived of his freedom of action in any significant way" must first be warned by police that "he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." If at that point, the person indicates that he wants an attorney, the interrogation must cease until an attorney is present. *Id.* at 473–74, 86 S. Ct. at 1627–28, 16 L. Ed. 2d at 723. The *Miranda* Court dictated that:

> If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. . . . If the individual states that he wants an attorney, the interrogation must cease until an attorney is present. At that time, the individual must have an opportunity to confer with the attorney and to have him present during any subsequent questioning. . . . [The police] must respect his decision to remain silent.

*Id.*

In *Edwards v. Arizona*, 451 U.S. 477, 484–85, 101 S. Ct. 1880, 1884–85, 68 L. Ed. 2d 378, 386 (1981), the Court further clarified that when an individual expresses a desire for counsel, the authorities must cease any further interrogation until counsel is present or the accused individual has initiated further communication with the police. The State carries the burden of proving that the individual "knowingly and intelligently waived" these privileges afforded under the Fifth Amendment. *Miranda,* 384 U.S. at 475, 86 S. Ct. at 1628, 16 L. Ed. 2d at 724.

After being read his *Miranda* rights by Bender, Walls stated, "Roger Owens. Can you get in contact with him? That's my attorney." To this Bender asked, "Is that what you're wanting me to do?" To which Walls responded, "Yeah." This is clearly a request for an attorney. Bender was

then required to cease all interrogation until an attorney was present. *Edwards*, 451 U.S. at 484–85, 101 S. Ct. at 1884–85, 68 L. Ed. 2d at 386; *Miranda*, 384 U.S. at 473–74, 86 S. Ct. at 1627–28, 16 L. Ed. 2d at 723. Bender's decision to proceed with the interrogation was in violation of Walls' Fifth Amendment rights against self-incrimination and to counsel. The district court erred in not granting Walls' motion to suppress his interrogation testimony.

### IV. Harmless Error.

Most federal constitutional errors, including the erroneous admission of evidence in a criminal trial in violation of a defendant's Fifth, Sixth, and Fourteenth Amendment rights, do not require reversal if the error is harmless. *State v. Harris*, 741 N.W.2d 1, 10 (2007) (citing *Peterson*, 663 N.W.2d at 430). Harmless-error analysis looks to the basis on which the jury's verdict actually rested. *Peterson*, 663 N.W.2d at 431. "To establish harmless error, the State must 'prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" *Id.* (quoting *Chapman v. California*, 386 U.S. 18, 24, 87 S. Ct. 824, 828, 17 L. Ed. 2d 705, 710 (1967)).

To determine whether the State has met its burden under the harmless-error standard, the court employs a two-step analysis. *Id.* (citing *Yates v. Evatt*, 500 U.S. 391, 404, 111 S. Ct. 1884, 1893, 114 L. Ed. 2d 432, 449 (1991)). First, the court asks what evidence the jury actually considered in reaching its verdict. *Id.* Second, the court weighs the probative force of that evidence against the probative force of the erroneously admitted evidence standing alone. *Id.* This step requires the court to ask "whether the force of the evidence is so overwhelming as to leave it beyond a reasonable doubt that the verdict resting on that

evidence would have been the same without the erroneously admitted evidence." *Id.*

**A. Evidence Jury Actually Considered.** In this case, the State was required to prove the elements of five separate counts: (1) sexual abuse in the first degree, (2) sexual abuse in the second degree, (3) willful injury causing serious injury, (4) kidnapping, and (5) assault. Besides Walls' erroneously admitted testimony, the State presented four witnesses.

Susan Lombard testified in detail regarding the incident. She told the jury that she was an alcoholic and crack addict, and had come to Des Moines to get drugs. She testified that on the morning of May 7, Walls jumped into the backseat of her car, was "very angry," and kept yelling about his stolen money and drugs. Lombard testified that he told her to drive down an alleyway, that he pulled a gun on her, and that he dragged Riley into the backseat, forced her to strip, and put her in the trunk. Then Lombard testified that Walls asked her to perform a sex act, and when she refused, he attempted to force her to do the act, pistol-whipped her several times, stomped on her hand, and attempted to place her in the trunk with Riley. She also testified about her escape to Nancy Pilcher's house, the extent of the injuries she suffered due to the incident, and that she denied being sexually abused at the hospital because she felt the staff was treating her horribly.

Cathy Riley testified that she too was a drug addict. She testified that she had met Lombard the day before the alleged incident through a drug dealer, John Cameron, and that she and Lombard had been drinking beer and smoking crack. Riley also testified that Walls got into Lombard's car, that he was very angry, and that after parking in the alley, he grabbed Riley's hair, pulled her into the backseat, made her

strip, hit her, and put her in the trunk naked. Riley testified that although she could hear Walls hit Lombard and say, "we're not going to stop until you get it right," and Lombard begging for him to stop, she did not see Walls attempting to rape Lombard. Riley stated that she kicked through the trunk into the backseat, but when she stuck her head through the opening Walls pointed the gun at her and she retreated. She testified that when Walls opened the trunk to put Lombard inside, she escaped.

Nancy Pilcher testified that Lombard came running into her house "all bloody and physically hurt." She then stated that Lombard ran around her house looking for a place to hide and stated, "call 911; he's going to kill me," before collapsing in her entryway. Pilcher also testified that Lombard said that she was an alcoholic, that she had come to Des Moines to get drugs, and that she had been pistol-whipped by a man after she refused his sexual advances.

Alycia Peterson, a Des Moines police officer, testified that when she arrived at Pilcher's home Lombard was in "pretty bad shape." Peterson testified that Lombard said she had been pistol-whipped by a man after refusing to perform a sex act. The police recovered physical evidence of the attack, including prints, bloodstains, discarded clothing, and took pictures of the broken backseat. The police also obtained a partially corroborating statement from Riley before she was able to discuss the incident with Lombard.

During the course of his interrogation with Officer Bender, Walls made statements concerning three of the five charges against him. He admitted that he got into the backseat of Lombard's car and forced Lombard to drive him to an alley near Tenth Street and Franklin. Walls also admitted he wanted to interrogate the women and threatened them

with a gun. He further stated that he made Riley swallow some crack, forced her to take off all her clothes, and put her in the trunk.

Regarding Lombard's assault, Walls told Bender that he hit her multiple times with his gun, "[b]ecause she wouldn't tell me what the f___ I wanted to know. Honestly, she wouldn't tell me what I wanted to know." In response to Bender's questioning, Walls admitted that he also intended to put Lombard in the trunk, and that afterwards he tried to clean the gun with bleach, but was unable to get rid of all the evidence. He explained how Riley had kicked through the trunk to the backseat and described in detail Lombard's attempts to get him to stop beating her. His recital of the statements made by Lombard during the assault mirrored her earlier statements to police.

**B. Probative Force of Evidence.** In weighing the probative force of the untainted evidence the jury actually considered against the probative force of Walls' erroneously admitted testimony, the key question for this court is "whether we can conclude the erroneously admitted statements are so unimportant in relation to everything else the jury considered that there is *no reasonable possibility* they contributed to [the defendant's] conviction." *Peterson*, 663 N.W.2d at 434 (emphasis in original). It is not enough that the State show that the same result is probable in the context of a constitutional error. *Sullivan v. Louisiana*, 508 U.S. 275, 279, 113 S. Ct. 2078, 2081, 124 L. Ed. 2d 182, 189 (1993) ("The inquiry, in other words, is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in *this* trial was surely unattributable to the error." (Emphasis in original)). The State must prove beyond a reasonable doubt that there is "no reasonable possibility" the falsely admitted statements contributed to Walls' conviction.

*Peterson*, 663 N.W.2d at 434. In explaining this test, we stated: "It is only when the effect of the incorrectly admitted evidence is comparatively minimal to this degree that it can be said . . . there is no reasonable possibility that such evidence might have *contributed* to the conviction." *State v. Hensley*, 534 N.W.2d 379, 383 (Iowa 1995) (emphasis added).

Walls' admissions were detailed confessions to kidnapping, willful injury, and assault. In weighing the probative force of the untainted evidence, however, we note one of the victims admittedly spent three days drinking and doing drugs, and the second victim was engaged in similar activities. In addition, the other witnesses saw the victims only after the assault.

The State's assertion on appeal that the effect of the interrogation is comparatively minimal is belied by its use of the testimony at trial. The prosecutor emphasized the admissions in the opening statement. The entire one and a half hour interrogation was played to the jury at the end of the State's case, capping its case in chief. Finally, Walls' statements became the cornerstone of the State's closing argument. The prosecutor used the statements as proof of almost every disputed element of each crime charged. He played excerpts of the interrogation at least eight times and commented on each. Quotes were put on slides and shown to the jury, again with comments. The State certainly did not believe that the admissions were "unimportant in relation to everything else." *Peterson*, 663 N.W.2d at 434.

Walls did not admit to the sexual assault, but was nevertheless convicted of sexual abuse, even in light of Lombard's denial at the hospital of being sexually abused and Riley's testimony that she never saw the sexual assault. Given the harmful nature of Walls' statements corroborating the other charges and their use at trial, we cannot say the

effect of these statements is so comparatively weak that there is no reasonable possibility that such statements might have contributed to the conviction for sexual abuse. Further, Walls' confession virtually guaranteed his conviction on the remaining charges. Although the same result may have been probable, it would defy credulity to find that there was no reasonable possibility the confession contributed to Walls' conviction. The error was not harmless.

## V. Disposition.

We find that the district court should have suppressed Walls' interrogation testimony and erred in admitting those statements into evidence during trial. Such error was not harmless beyond a reasonable doubt. We therefore vacate the court of appeals decision, reverse the district court's judgment of conviction and sentence, and remand the case for a new trial.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED AND REMANDED.**

All justices concur except Cady, J., who dissents.

**CADY, Justice (dissenting).**

I agree the custodial statements made by Walls were improperly admitted into evidence at trial, but I would conclude the error was harmless.

We recognize the harmless-error doctrine and follow a two-step analysis in the application of the doctrine to a particular case. *State v. Hensley*, 534 N.W.2d 379, 383 (Iowa 1995). Under this doctrine, the probative force of the evidence considered by the jury in reaching its verdict is weighed against the probative force of the evidence that was improperly admitted. *Id.* The error is harmless if the force of the properly admitted evidence is so overwhelming that the verdict would have been the same without the improperly admitted evidence. *Id.* There must be no reasonable possibility the improperly admitted evidence contributed to the verdict. *Id.*

The two victims of the crimes in this case, Lombard and Riley, detailed the actions of Walls in their trial testimony with remarkable consistency. Essentially, they testified Walls pulled a gun on them while in Lombard's car, placed Riley in the trunk of the car after forcing her to strip naked, and repeatedly beat Lombard while in the car after she resisted his efforts to obtain oral sex. The testimony of Lombard and Riley clearly supported the convictions for sexual abuse, willful injury, and kidnapping. A witness who observed the bloody and battered Lombard immediately after she escaped from the car gave testimony at trial that was consistent with both victims' testimony, including an excited utterance by Lombard that she had been pistol-whipped for refusing sexual advances. A police officer who arrived at the scene also provided testimony consistent with the testimony of Lombard and Riley.

Physical evidence gathered by police was also consistent with the testimony of Lombard and Riley, including discarded clothing and evidence Riley tried to escape from the trunk.

The improperly admitted evidence essentially consisted of statements by Walls that he entered Lombard's car, threatened the two women with a gun, and placed Riley in the trunk of the car after forcing her to disrobe. He also said he hit Lombard with the gun and later tried to clean the gun with bleach to destroy any evidence. He also made a statement that he attempted to place Lombard in the trunk and corroborated Riley's testimony that she tried to escape from the trunk.

The majority essentially concludes the harmless-error test cannot be met because the improperly admitted statements were emphasized by the prosecutor in opening and closing arguments and were corroborated by the testimony of the other witnesses. The majority believes the presence of these two factors means the improperly admitted statements necessarily contributed to the guilty verdict. This approach is a misapplication of the harmless-error doctrine and effectively renders it meaningless when applied to improperly admitted incriminating statements by an accused. Nearly all confessions admitted at trial influence the verdict, and it should come as no surprise that prosecutors tend to emphasize confessions and that confessions tend to be consistent with the other evidence offered by the prosecution. If the doctrine is inapplicable to improperly admitted confessions, we would not have applied it in *Hensley* to find the trial court error harmless. *See id.* at 384 (holding improperly admitted statement by defendant that he believed the vehicle was stolen was harmless error in a conviction for vehicle theft, even though an element of the crime required proof that defendant knew or had a reasonable belief the vehicle was stolen). The test is not

whether the improperly admitted evidence was consistent with the verdict or was emphasized by the prosecutor, but whether the properly admitted evidence was so strong that the verdict would have been the same without the improperly admitted evidence. The majority has failed to properly apply this test by considering the strength of the properly admitted evidence and has improperly focused on two factors that do not drive the outcome of the test.

Applying the harmless-error test in this case, the probative force of the evidence produced by the State on all four crimes, without considering the improperly admitted statements by Walls, was overwhelming. Each victim presented very similar testimony, which was consistent with the other evidence offered by the State supporting the convictions. The majority points out the victims were consuming drugs and alcohol in the days prior to the incident, but there is no indication this activity adversely impacted their ability to observe and recall the incident. On the other hand, the probative force of each statement by Walls, weighed against the other evidence of guilt, was minimal. The force of this evidence was minimal because the testimony of Lombard was corroborated by the testimony of Riley, and vice versa. Additionally, the testimony of both women was consistent with the other evidence offered by the State. Consequently, other than the statement by Walls that he cleaned the gun with bleach, the improperly admitted statements were only cumulative, and the outcome of the trial would have been the same without the statements. The statement by Walls that he cleaned the gun with bleach was minimal and could not have contributed to the verdict.