# IN THE COURT OF APPEALS OF IOWA

No. 18-0796
Filed May 1, 2019

**IN THE INTEREST OF K.E.,**
**Minor Child,**

**K.E., Minor Child,**
     Appellant.

_____

Appeal from the Iowa District Court for Mahaska County, Rose Anne Mefford, District Associate Judge.

A minor appeals after being adjudicated a delinquent for theft in the second degree, possession of stolen property. **AFFIRMED.**

Jeffrey A. Smith, Oskaloosa, for appellant.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Considered by Potterfield, P.J., and Tabor and Bower, JJ.

**POTTERFIELD, Presiding Judge.**

K.E., a minor, appeals after being adjudicated a delinquent for theft in the second degree, possession of stolen property, in violation of Iowa Code sections 714.1(1), 714.1(4), and 714.2(2) (2017).  He alleges the State failed to prove the theft occurred within the statute of limitations, trial counsel was ineffective in failing to move for a judgment of acquittal, and there is insufficient evidence K.E. knew the four-wheeler in his possession was stolen.  We affirm.

On May 28, 2017, Brad Hornick parked his black 2006 Polaris four-wheeler (which was in working order) on Kip Greenhalgh's property on Highway 92 near Oskaloosa chained to a tree with a "For Sale" sign on it.[1]  When he checked on the four-wheeler at about 1:00 p.m. on May 29, the chain had been cut and the vehicle was gone.

Hornick's Polaris four-wheeler, which was now painted red and had a new ignition switch, was located in K.E.'s father's garage on June 23.[2]  K.E. and his parents returned the four-wheeler to the sheriff's office.  Photographs were taken of the vehicle.  K.E. told law enforcement Tyler E. had given the four-wheeler to him when he was swimming at Tyler's grandparents' acreage.[3]  K.E. told officers Tyler said it was junk and if K.E. wanted it he had to pick it up.  K.E.'s father stated he went to pick up K.E. and the four-wheeler from Tyler's grandparents' acreage.  K.E.'s father said it was in parts and he did a bit of work on the four-wheeler when they got it back to their garage.

---

[1] Hornick was trying to sell the vehicle for $1500 to $1800.
[2] The VIN on the four-wheeler in K.E.'s father's garage matched the VIN of Hornick's missing vehicle.
[3] Tyler's grandparents are the Keaslings.

Tyler acknowledged that he and K.E. spent time together "this past summer, the summer of 2017" and went swimming just once at the Keaslings' acreage. While he could not remember the exact date, he stated it was before school was out for the summer and about a week before he went to Texas with his grandfather—they left on May 28. After Tyler was informed by law enforcement that K.E. said Tyler told him he could have the Polaris, Tyler stated he had never seen the vehicle, his grandfather did not have such a vehicle on the property, and he did not give the four-wheeler to K.E.

K.E. was charged with committing the delinquent act of possessing stolen property having a value of more than $1000 but less than $10,000.

Tyler's father and mother both testified they were aware that Tyler and some friends went swimming at the Keasling acreage in May 2017. Both stated that there was no Polaris at the acreage similar to the one found at K.E.'s garage. If there had been such a four-wheeler at the Keasling acreage, they would not have given it away.

Tyler's mother testified her parents go to Texas every month for a flea market called "First Monday Trade Days." Tyler goes with them to help set up. Tyler and his grandparents left early in the morning on May 29, set up for the market, and returned to Iowa the following Sunday, June 11.

K.E.'s mother testified K.E. called her about a week to ten days before K.E.'s birthday, which was on June 21, to tell her he got a four-wheeler. She asked K.E. if his father had bought it as a birthday present. K.E. told her Tyler had given it to him.

K.E.'s father testified that in June 2017, at least a week before K.E.'s birthday, K.E. called him from where he was swimming with Tyler and asked his father to come to Tyler's grandparents' house to help him pick up "four-wheelers." K.E.'s father followed a map sent to him by K.E. He had never been to the property before and did not know the Keaslings. He testified the four-wheeler, which was maroon in color, was among tall weeds along a fence line; "The body parts were off. The headlight was laying on the ground. I went and grabbed the kick starter on it and tried it. It was locked up. I couldn't even kick-start it." He testified the value to be $200 to $300. K.E.'s father testified he replaced the ignition because there was no key with the four-wheeler. He said he had no idea the vehicle was stolen until law enforcement informed him. He transported the four-wheeler to the sheriff's office. He denied that the vehicle he returned looked as good as the four-wheeler depicted in photographs.

K.E. testified that in June he was invited to go swimming at the Keaslings' property by Chris M. "a week or two before my birthday." K.E. stated he and Chris saw a couple of four-wheelers in the grass as they were riding around on another four-wheeler: "It was in some weeds down by the timberline, and the body was off of it. The headlight was on the ground. I mean, it looked like it was junk." K.E. stated Tyler told him, "You can have it if you want it." K.E. testified he did not try to start it. He called his father to pick the four-wheeler up. When they unloaded the vehicle and cleaned it up, "it was just dirty" but "it didn't run."

K.E., like his father, denied that the four-wheeler he had in the garage looked like the one in the photographs in evidence. The following exchange took place during K.E.'s testimony:

Q. If you were shown the four-wheeler in the condition that it's in, in this picture here, and someone was going to give that to you, would you have thought twice about it? A. Yes.

Q. And why is that? A. Why would someone give me that nice of a four-wheeler?

K.E. estimated the value of the four-wheeler he retrieved from the Keasling property was about $350 to $400.

K.E. also testified that shortly after he spoke with a deputy on the phone in June, Chris called him and "said something about, 'Dude, what happened with these stolen four-wheelers?' I'm, like, 'What?' He was, like, 'Somehow these four-wheelers were stolen.'"

The trial court adjudicated K.E. delinquent for possession of stolen property. K.E. appeals.

On appeal, K.E. asserts the State failed to prove in what year the alleged offense occurred and thus failed to prove it occurred within the statute of limitations. He also contends trial counsel was ineffective in failing to move for a judgment of acquittal on the basis of the lack of proof that the offense occurred within the statute of limitations. The record, set out above, belies K.E.'s claim that the State failed to prove the alleged act occurred in 2017.

K.E. concedes he was in possession of stolen four-wheeler. However, he contends there is insufficient evidence he knew or had reasonable cause to believe the four-wheeler was stolen.

"We review claims of insufficient evidence for correction of errors at law, 'and we will uphold a verdict if substantial evidence supports it.'" *State v. Benson*, 919 N.W.2d 237, 241 (Iowa 2018) (citation omitted). We view challenges to the sufficiency of the evidence in the light most favorable to the

State. *State v. Keopasaeuth*, 645 N.W.2d 637, 640 (Iowa 2002). This includes all reasonable inferences that may be drawn from the evidence. *Id.* We consider all evidence, not just that of an inculpatory nature. *Id.*

When one "[e]xercises control over stolen property, knowing such property to have been stolen, or having reasonable cause to believe that such property has been stolen," the person commits a theft. Iowa Code § 714.1(4). Under section 714.1, it is "necessary to establish that the accused actually did believe that the property was stolen." *State v. Hutt*, 330 N.W.2d 788, 790 (Iowa 1983).

"Guilty knowledge can be inferred from unexplained possession of recently stolen property." *State v. Bakker*, 262 N.W.2d 538, 542 (Iowa 1978); *State v. Dykers*, 239 N.W.2d 855, 859 (Iowa 1976). When an accused offers an explanation for his possession and a credibility question exists with relation to that explanation, the question of the accused's guilty knowledge is one for the trier of fact. *Dykers*, 239 N.W.2d at 859-60.

We conclude there is substantial evidence from which the factfinder—the trial court—could determine K.E. did believe the four-wheeler in his possession was stolen. *See State v. Hensley*, 534 N.W.2d 379, 384 (Iowa 1995) ("[T]he State's circumstantial proof forcefully shows that defendant actually believed that the motorcycle was stolen. The circumstantial evidence includes the altered ignition, the missing license plate, and defendant's suspicious statements and fleeting actions.").

We agree with the trial court that K.E.'s offered story that Tyler gave him the stolen four-wheeler was contrary to Tyler's testimony and lacked credibility. The photographs of the four-wheeler do not show a "junk" vehicle, and both K.E.

and his father stated they did little work on it beyond replacing an ignition switch and cleaning it up.  The trial court also observed K.E. and his father "tried to minimize their familiarity with the [four]-wheeler in the photographs, even though they are the ones who brought that same [four]-wheeler to the sheriff's office where the photos were taken."  We note especially K.E.'s own testimony: "Why would someone give me that nice of a four-wheeler?"  Because there is substantial evidence to establish K.E. believed the four-wheeler in his possession was stolen, we affirm.

**AFFIRMED.**