# IN THE SUPREME COURT OF IOWA

No. 06–1417

Filed July 17, 2009

**STATE OF IOWA,**

Appellee,

vs.

**JAMES CARSON EFFLER,**

Appellant.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Polk County, Artis J. Reis, Judge.

The defendant seeks review of a ruling overruling his motion to suppress his statements. The court of appeals reversed the district court. **AFFIRMED BY OPERATION OF LAW.**

Angela L. Campbell of Dickey & Campbell Law Firm, PLC, for appellant.

Thomas J. Miller, Attorney General, Kevin Cmelik, Assistant Attorney General, John P. Sarcone, County Attorney, and Jeff Noble and Frank Severino, Assistant County Attorneys, for appellee.

**TERNUS, Chief Justice.**

The State convicted James Effler of first-degree kidnapping for taking a two-year-old girl to the men's bathroom of the Des Moines Central Library and sexually abusing her. Effler appealed his conviction, claiming the district court erred in denying his motion to suppress incriminating statements made during an interrogation after he had requested counsel. He also asserts he was denied effective assistance of counsel when his attorney failed to challenge the statements under the Iowa Constitution. The Iowa Court of Appeals reversed, and we granted further review.

After reviewing the record and considering the arguments presented, the justices are equally divided on the issue of whether the motion to suppress should have been granted.[1] The Iowa Code provides: "When the supreme court is equally divided in opinion, the judgment of the court below shall stand affirmed, but the decision of the supreme court is of no further force or authority." Iowa Code § 602.4107 (2009). Because the court of appeals reversed the district court, we are faced with contrary decisions by the lower courts. Therefore, we must construe section 602.4107 to determine whether "the judgment of the court below" that is affirmed by operation of law is the decision of the court of appeals or that of the district court.

To resolve this question, we are required to determine the legislature's intent. *IBP, Inc. v. Harker*, 633 N.W.2d 322, 325 (Iowa 2001). That intent is reflected in the words chosen by the legislature. *State v. Stone*, 764 N.W.2d 545, 549 (Iowa 2009). We give words their

---

[1]Chief Justice Ternus and Justices Cady and Streit would vacate the decision of the court of appeals and affirm the judgment of the district court. Justices Wiggins, Hecht, and Appel would affirm the decision of the court of appeals and reverse the judgment of the district court. Justice Baker takes no part.

ordinary meaning, unless the legislature has defined a term or the words have an established meaning in law. *Id.* In determining legislative intent, we consider a statute in its entirety, *Schadendorf v. Snap-On Tools Corp.*, 757 N.W.2d 330, 337 (Iowa 2008), and together with other related statutes and rules, *State v. Kostman*, 585 N.W.2d 209, 212 (Iowa 1998).

We begin with an analysis of the statutory language. The legislature identified the object of automatic affirmance as a "judgment" of the court below. A review of our rules of civil procedure reveals the following definition of "judgment": "Every final adjudication of any of the rights of the parties in an action is a judgment." Iowa R. Civ. P. 1.951; *accord Black's Law Dictionary* 858 (8th ed. 2004) (defining "judgment" as "[a] court's final determination of the rights and obligations of the parties in a case," and "includes an equitable decree and any order from which an appeal lies"). Viewing this definition in context and together with related rules convinces us that the term "judgment" has reference to the decision of a district court, not of the court of appeals.

As noted the quoted definition of "judgment" appears in the rules of civil procedure. There is no corresponding definition in the rules of appellate procedure indicating an appellate decision is also a "judgment." An official comment to rule of civil procedure 1.951 discusses the issue of when a "judgment" is appealable, again indicating the term refers to a district court judgment. *See* Iowa R. Civ. P. 1.951 official cmt. Although the word "judgment" also appears in the appellate rules, the term is used to refer to decisions of district courts. *See, e.g.,* Iowa R. App. P. 6.101(1)(*b*) (2009) ("A notice of appeal must be filed within 30 days after the filing of the final order or judgment."); *id.* r. 6.905(2)(*b*)(4) ("The appendix shall contain . . . [a] file-stamped copy of the judgment, order, or decision in question."). In addition, appellate courts do not enter a

judgment on appeal; the supreme court and court of appeals remand cases for entry of judgment by the district court. *See, e.g., State v. Cowles*, 757 N.W.2d 614, 615 (Iowa 2008) (remanding criminal case "for entry of a judgment reinstating the mandatory minimum sentence"); *Hook v. Lippolt,* 755 N.W.2d 514, 517 (Iowa 2008) (remanding civil case "for entry of judgment in favor of the defendants"); *Sheeder v. Boyette*, 764 N.W.2d 778, 779 n.2 (Iowa Ct. App. 2009) (remanding civil case for entry of a default judgment); *State v. Nickens*, 644 N.W.2d 38, 43 (Iowa Ct. App. 2002) (remanding criminal case "for entry of judgment of acquittal"). If a term used in a statute has a well-settled legal meaning, we assume the legislature was aware of this meaning when it enacted the statute. *Miller v. Marshall County*, 641 N.W.2d 742, 748 (Iowa 2002). Therefore, the legislature's use of the word "judgment" clearly evidences an intent that the *district court's* decision be automatically affirmed, not that of the court of appeals.

Our conclusion is entirely consistent with our deflective appellate structure, which supports the conclusion that the reference to "lower court" in section 602.4107 refers to the district court, not the court of appeals. The Iowa Constitution established the supreme court and its jurisdiction. Iowa Const. art. V, §§ 1, 4. The legislature established the court of appeals. Iowa Code § 602.5101. Under the deflective system of review established by the legislature, the court of appeals' jurisdiction

> is limited to those matters for which an appeal or review proceeding properly has been brought before the supreme court, and for which the supreme court pursuant to section 602.4102 has entered an order transferring the matter to the court of appeals.

*Id.* § 602.5103(3). Once a transfer has been made, the supreme court no longer has jurisdiction of the matter, unless a party seeks further review of the court of appeals decision. *Id.* § 602.4102(2), (4).

After the court of appeals decides a case transferred to it by the supreme court, a party may ask the supreme court for further review. *Id.* § 602.4102(4). The filing of the application for further review stays the judgment of the district court and the mandate of the court of appeals pending the action of the supreme court. *Id.* § 602.5106(2). If the supreme court does not grant further review, the court of appeals decision is final. *Id.* If the supreme court grants the application for further review, the supreme court once again obtains jurisdiction over the matter. *Id.* § 602.4102(2), (4).

When a case comes back to the supreme court on further review, our court reviews *the district court decision*, not that of the court of appeals. This focus on further review does not mean that we automatically vacate decisions of the court of appeals when further review is taken. To the contrary, efficient use of judicial resources will sometimes prompt our court to rely on the disposition made by the court of appeals on some issues and address only those issues that merit additional consideration. Moreover, if upon our review of the district court decision we come to the same conclusion as the court of appeals, we often choose to affirm the court of appeals decision with respect to those issues upon which there is agreement. These actions should not, however, confuse others regarding the object of our review, which remains the district court decision. An additional significant aspect of our review procedure is the fact that, when we remand a case, the case is remanded to the district court for further proceedings, not to the court of appeals. Consequently, based on the deflective appellate structure

adopted by the legislature, we are firmly convinced the phrase "judgment of the court below" as used in section 602.4107 refers to the district court decision, the decision the supreme court is reviewing when it grants an application for further review.

We conclude section 602.4107 requires that, when the supreme court is equally divided on an issue upon which the district court and court of appeals differ, the decision of the district court is affirmed by operation of law. Accordingly, in the case before us, the decision of the court of appeals is vacated, and the judgment of the district court is affirmed by operation of law pursuant to Iowa Code section 602.4107.

**AFFIRMED BY OPERATION OF LAW.**

For vacation of the court of appeals decision and affirmance of the district court judgment, Ternus, C.J., and Cady and Streit, JJ.; for affirmance of the court of appeals decision and reversal of the district court judgment, Wiggins, Hecht, and Appel, JJ. Baker, J., takes no part.

**STREIT, Justice.**

I would affirm the district court's ruling the confession was valid. This case is simple. Effler said that he wanted a lawyer "if I go to jail." Since he did not go to jail before he confessed, he was not deprived of his request for counsel. Effler's request for counsel was conditional and ambiguous under the standard set forth in *Davis v. United States*, 512 U.S. 452, 459, 114 S. Ct. 2350, 2355, 129 L. Ed. 2d 362, 371 (1994), and, therefore, he did not unequivocally invoke his Fifth Amendment right to counsel.

### I. Background Facts.

On our de novo review of the record, we find the following facts. On the morning of October 4, 2005, Melissa Martin was babysitting J.M., a two-year-old girl, for the first time. Martin took J.M. to the Des Moines Central Library. Martin stood at a fifteen-minute internet station, and J.M. stood beside her leg. A few minutes later, Martin noticed J.M. was no longer there and began calling out her name. One of the librarians began a search for the child and remembered seeing Effler handing a toy to a toddler girl. The librarian suggested checking the men's bathroom. Martin and the librarian rushed over to the men's bathroom. The librarian tried to open it with her key, but it was locked from inside. They started pounding on the door calling the child's name. They heard two "bloodcurdling" screams followed by silence. The librarian asked her staff to call the maintenance man, who pried the lock open with a screwdriver. Inside the bathroom, they found a shirtless Effler kneeling next to J.M., who was completely naked. Martin picked up J.M. and ran out. Staff members slammed the door shut, preventing Effler from escaping. Two men held the door shut until the police arrived. The

police wrestled Effler to the floor, handcuffed him, and took him to the Des Moines Police Station.

At the police station, a detective interviewed Effler in a small interview room. The detective videotaped the entire interview. *See State v. Hajtic*, 724 N.W.2d 449, 456 (Iowa 2006) (encouraging the videotaping of custodial interrogations). The relevant part of the custodial investigation involving Effler's *Miranda* rights contained the following exchanges between the detective and Effler:

> DETECTIVE: Okay. I'll tell you what, did they tell you what your rights were, James? Do they call you Jim, James?
>
> EFFLER: James.
>
> DETECTIVE: James.
>
> EFFLER: They said that I am only being booked for ahh intoxic public right now.
>
> DETECTIVE: Oh.
>
> EFFLER: Is that true?
>
> DETECTIVE: I don't -- I don't know that you are not actually booked even yet. I mean there is no booking been done.
>
> EFFLER: So I am being released?
>
> DETECTIVE: Well if they book you for intox then you got to you know you are not gonna get released.
>
> EFFLER: That would be overnight.
>
> DETECTIVE: Usually it's overnight judges usually let you out in the morning I suppose, huh.
>
> EFFLER: Yeah.
>
> DETECTIVE: You know what your rights are?
>
> EFFLER: You have the right to remain silent and anything you say can used . . .
>
> DETECTIVE: Mm Mmm. Used against you?
>
> EFFLER: Yes.

DETECTIVE: Um, you have the right to a lawyer, talk to a lawyer for advice before I ask any questions and with you before -- during questioning if you wish. If you can't afford one, one will be appointed to you before any questioning if you wish. If you decide to answer questions now without a lawyer present, you will still have the right to stop answering at any time. You also have the stop right to stop answering at any time until you talk to a lawyer. And I will give you a copy of this in writing. I have read this statement of my rights and I understand what my rights are. I am willing to make a statement and answer questions. I do not want a lawyer at this time. I understand and know what I am doing.

EFFLER: I do want a court-appointed lawyer.

DETECTIVE: Okay.

EFFLER: If I go to jail.

DETECTIVE: No, let me finish this and then we'll talk, okay? Okay, I got one more sentence. No promises or threats have been made to me and no pressure or coercion of any kind has been used against me. So if you want to talk to me . . .

EFFLER: Say, sir . . .

DETECTIVE: Yes sir.

EFFLER: Can we go outside where I can smoke a cigarette, please?

DETECTIVE: Can you hold on for a little bit?

. . . .

DETECTIVE: Okay. Okay. Here's all those things I talked to you about the right to remain silent and all that, you remember? Well you know most of them. Do you want to read this, James?

EFFLER: I already know them.

DETECTIVE: Okay, if you want to talk to me sign there and we will go get a smoke and then we'll talk in a minute.

Effler then signed a waiver of his *Miranda* rights, and the two left the room so Effler could smoke a cigarette. When they returned, the detective asked Effler some questions, and Effler confessed to taking J.M. to the bathroom and locking the door. He described how he took off her

clothes, licked and rubbed her genitals, masturbated, and tried to put his penis inside her vagina.

The State charged Effler with first-degree kidnapping, second-degree sexual abuse, and failure to register as a sex offender after a 2002 conviction for sexual assault in Texas. Prior to trial, Effler filed a motion to suppress the confession on the ground the State violated his Fifth Amendment right to counsel. The district court denied the motion, finding Effler's request for counsel "conditioned upon his going to jail." Effler was found guilty and sentenced to life imprisonment without the possibility of parole.

Effler appealed, claiming the trial court erred in denying his motion to suppress and the State denied him effective representation of counsel for his attorney's failure to challenge the statements under the Iowa Constitution. The court of appeals reversed, concluding the State violated Effler's Fifth Amendment right to counsel. We granted further review.

**II. Scope of Review.**

We review constitutional claims de novo. *State v. Bumpus*, 459 N.W.2d 619, 622 (Iowa 1990).

**III. Analysis.**

**A. Fifth Amendment Right to Counsel.** In *Miranda v. Arizona*, 384 U.S. 436, 473, 86 S. Ct. 1602, 1627, 16 L. Ed. 2d 694, 723 (1966), the United States Supreme Court determined the Fifth and Fourteenth Amendments require the police to inform a suspect he has a right to remain silent and a right to counsel during a custodial interrogation. Absent *Miranda* warnings and a valid waiver of those rights, statements made during an interrogation are inadmissible. *Miranda*, 384 U.S. at 479, 86 S. Ct. at 1630, 16 L. Ed. 2d at 726.

When a suspect clearly invokes his right to counsel during a custodial interrogation, the police must stop questioning him immediately until an attorney is present. *Edwards v. Arizona*, 451 U.S. 477, 484, 101 S. Ct. 1880, 1884–85, 68 L. Ed. 2d 378, 386 (1981). The request for counsel must be "unambiguous" and "unequivocal." *Davis*, 512 U.S. at 459, 114 S. Ct. at 2355, 129 L. Ed. 2d at 371.

> Although a suspect need not "speak with the discrimination of an Oxford don," he must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney.

*Id.* (quoting *id.* at 476, 114 S. Ct. at 2364, 129 L. Ed. 2d at 382 (Souter, J., concurring in judgment)). Thus, if a suspect clearly asks for an attorney, questioning must stop immediately. *Edwards*, 451 U.S. at 484, 101 S. Ct. at 1884–85, 68 L. Ed. 2d at 386. However, questioning need not cease "if a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel." *Davis*, 512 U.S. at 459, 114 S. Ct. at 2355, 129 L. Ed. 2d at 371. The United States Supreme Court declined to adopt a rule requiring officers to ask clarifying questions when the suspect's statement is ambiguous or equivocal, although it suggested doing so would be a good practice. *Id.* at 461, 114 S. Ct. at 2356, 129 L. Ed. 2d at 373.

Under the standard set forth in *Davis*, federal and state courts have found the following statements to be ambiguous or equivocal, *not* sufficient to invoke the Fifth Amendment right to counsel under the circumstances: "Maybe I should talk to a lawyer," *Id.* at 462, 114 S. Ct. at 2357, 129 L. Ed. 2d at 373; "You want to arrest me for stealing a car,

then let me call a lawyer and I'll have a lawyer appointed to me and, because this is going no where.", *State v. Spears*, 908 P.2d 1062, 1071 (Ariz. 1996); "If I need a lawyer, tell me now," *State v. Harris*, 741 N.W.2d 1, 6 (Iowa 2007); "I think I need an attorney," *State v. Morgan*, 559 N.W.2d 603, 608 (Iowa 1997); "Can I have someone else present too, I mean just for my safety, like a lawyer like y'all just said?", *Commonwealth v. Hilliard*, 613 S.E.2d 579, 585 (Va. 2005).

In comparison, courts have determined the following statements are unambiguous and unequivocal requests for counsel:  "Can I get an attorney right now, man?", *Alvarez v. Gomez*, 185 F.3d 995, 998 (9th Cir. 1999); "We're going to do it with a lawyer.  That's the way I got to go," *Harris*, 741 N.W.2d at 7; "Can I get a lawyer in here?", *Hilliard*, 613 S.E.2d at 586.

The United States Supreme Court has not addressed the issue of whether a conditional request, such as Effler's, constitutes a clear and unequivocal request for a lawyer.  There are, however, a few state court decisions concerning conditional requests for counsel.  In *People v. Gonzalez*, 104 P.3d 98, 106 (Cal. 2005), the Supreme Court of California held a request for a lawyer conditioned on being charged was not an unambiguous request sufficient to invoke the defendant's Fifth Amendment rights under *Davis*.  When asked if he would submit to a polygraph test, Gonzalez replied, "if for anything you guys are going to charge me I want to talk to a public defender too, for any little thing." *Gonzalez*, 104 P.3d. at 102.  The court explained,

> The conditional nature of the statement rendered it, at best, ambiguous and equivocal because a reasonable police officer in these circumstances would not necessarily have known whether the condition would be fulfilled since, as these officers explained, the decision to charge is not made by police.  Confronted with this statement, a reasonable police

officer would have understood only that "the suspect *might* be invoking the right to counsel," which is insufficient under *Davis* to require cessation of questioning.

*Id.* at 106 (quoting *Davis*, 512 U.S. at 459, 114 S. Ct. at 2355, 129 L. Ed. 2d at 371).

The side that would reverse the trial court relies on *Gonzalez* to conclude "a reasonable police officer would believe [Effler's] words constituted an unequivocal request for assistance of counsel in light of the circumstances." I disagree with their application of the case. The other side asserts there is a difference between what the officers questioning Gonzalez knew and what the officer questioning Effler knew. Gonzalez wanted an attorney if he was going to be charged. *Id.* at 102. As the court explained, the detectives questioning Gonzalez did not know whether he was going to be "charged" since, in California, the police do not make that decision. *Id.* at 106. Here the side that would reverse the trial court asserts the police officer knew for certain Effler was going to jail because of the evidence they had previously gathered before questioning Effler, and, therefore, the condition had been fulfilled. There is no distinction between what the detectives really knew in *Gonzalez* and what the police officer knew here. In both situations, the suspect did not clearly invoke his right to counsel.

Further, other state courts have interpreted similar conditional requests for counsel as ambiguous. The Supreme Court of Arizona determined the statement, "If I'm going to jail, I want to talk to my lawyer," was ambiguous and equivocal.[2] *State v. Newell*, 132 P.3d 833,

---

[2]A videotape of the Arizona interrogation revealed Newell said, "I want to call my lawyer," while the detective was talking. *State v. Newell*, 132 P.3d 833, 841 (Ariz. 2006). As the detective did not understand what Newell was saying, since they were both talking at the same time, the detective asked him whether he was requesting a lawyer. *Id.* Newell responded, "No. If I'm getting accused right now, if I'm getting charged for it yeah, I want my lawyer." *Id.* at 842 n.8. The detective then attempted to further clarify

842 (Ariz. 2006). The Louisiana Court of Appeals determined the statement "I already told you everything and if this is gonna continue I'll just wait for a lawyer" was not an unequivocal invocation of the suspect's right to counsel. *State v. Genter*, 872 So. 2d 552, 571 (La. Ct. App. 2004).

Considering all of the facts and circumstances, Effler's request for a lawyer was insufficient to invoke his right to counsel. The side that would reverse the trial court fails to recognize the inherent ambiguity in Effler's statement. There are a few different ways to interpret the conditional clause "if I go to jail." One possibility is "I want a lawyer *when* I go to jail." Under that interpretation, Effler's statement was conditional and ambiguous. He wanted a lawyer *if* and *when* he went to jail. At the time of the interrogation and at the time Effler made that statement, he was not in jail, and no charges had been filed against him. He was seated at a table across from a detective and drinking a can of pop. His statement did not indicate he wanted a lawyer at that moment. As the condition of going to jail had not been fulfilled, the conditional nature of the request rendered it ambiguous.

Another interpretation of Effler's statement is "I want a lawyer if I *am going* to jail." Even under this interpretation, it is arguable whether the condition had been fulfilled. Surely, the detective knew Effler was going to jail. However, it is unclear whether Effler himself knew he was going to jail after the interrogation. Effler thought he was being booked for public intoxication, and the detective told him "well if they book you

_____

whether Newell wanted a lawyer. *Id.* Newell then said something like "I'm willing," followed by something unintelligible, and then he said, "If I'm going to jail, I want to talk to my lawyer." *Id.* Using an abuse of discretion standard in reviewing the superior court's decision, the Arizona Supreme Court did not analyze why the statement was ambiguous but simply concluded "a reasonable officer would not consider [the statements] unequivocal." *Id.* at 842.

for intox, then . . . you're not going to get released." However, the detective also indicated he was not sure whether Effler was going to be booked for public intoxication. It could be argued the condition "if I'm going to jail" had been satisfied at the time Effler requested counsel, since Effler was indeed going to jail after the conclusion of the interview. However, to establish the condition of Effler's request for an attorney (i.e. jail) had been satisfied requires changing the word "go" to "going." Such a change expands the meaning of Effler's statement.

The very fact that we have to dissect Effler's statement and engage in an in-depth discussion to determine exactly what he meant by "if I go to jail" indicates his statement was ambiguous, and it is uncertain whether "a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Davis*, 512 U.S. at 459, 114 S. Ct. at 2355, 129 L. Ed. 2d at 371. As a couple of different interpretations of Effler's statement "I do want a court-appointed lawyer . . . if I go to jail" are possible, it is unclear whether Effler was invoking his right to counsel. A reasonable police officer under these circumstances would have understood only that Effler "*might* be invoking the right to counsel." *Id.* Officers have no obligation to stop questioning an individual who makes an ambiguous or equivocal request for an attorney. *Id.* at 461–62, 114 S. Ct. at 2356, 129 L. Ed. 2d at 373. Thus, Effler did not effectively invoke his Fifth Amendment right to counsel, and the detective was permitted to continue questioning Effler.

According to the interpretation of the side that would reverse the trial court, Effler's statement means, "If you think I'm going to jail, I want an attorney." This interpretation suggests that if a suspect expresses interest in a lawyer (however ambiguous), then the interrogation must

cease. That standard would encompass statements that the United States Supreme Court and other state supreme courts have held ambiguous. *See, e.g., Davis*, 512 U.S. at 462, 114 S. Ct. at 2357, 129 L. Ed. 2d at 373 ("Maybe I should talk to a lawyer."); *Spears*, 908 P.2d at 1071 ("You want to arrest me for stealing a car, then let me call a lawyer and I'll have a lawyer appointed to me and, because this is going no where."); *Harris*, 741 N.W.2d at 6 ("If I need a lawyer, tell me now."); *Hilliard*, 613 S.E.2d at 585 ("Can I have someone else present too, I mean just for my safety, like a lawyer like y'all just said?"). The side that would reverse the trial court would have the police become mentalists and interpret what suspects say into what they should be saying.

Here the detective understood Effler's request for counsel as conditional. When Effler stated he wanted counsel "if I go to jail," the detective was not required to stop questioning him. As Effler's statement did not meet the standard of clarity set forth in *Davis*, he did not invoke his Fifth Amendment right to counsel. Effler subsequently signed the *Miranda* waiver form and confessed. Because he did not unambiguously and unequivocally request counsel, his statements made after signing the *Miranda* waiver form are admissible. I would vacate the court of appeals and affirm the district court.

**B. Ineffective Assistance of Counsel.** Effler also contends he was denied effective representation based on his attorney's failure to challenge the statements under the Iowa Constitution. To succeed on a claim of ineffective assistance of counsel, the defendant must demonstrate "(1) counsel failed to perform an essential duty, and (2) prejudice resulted." *State v. Lane*, 743 N.W.2d 178, 183 (Iowa 2007). "We recognize that an attorney need not be a 'crystal gazer' who can predict future changes in established rules of law in order to provide

effective assistance to a criminal defendant." *State v. Schoelerman*, 315 N.W.2d 67, 72 (Iowa 1982); *see also Snethen v. State*, 308 N.W.2d 11, 16 (Iowa 1981) (holding counsel was not ineffective for failing to raise an issue contrary to established case law).

Effler was not denied effective assistance of counsel when his attorney failed to challenge the admissibility of his statement under the Iowa Constitution. Iowa Const. art. I, § 9. We have previously determined that clarifying questions are not required under article I, section 9 of the Iowa Constitution. *State v. Morgan*, 559 N.W.2d 603, 609 (Iowa 1997).

> As a final challenge to the confession evidence, Morgan asks this court to impose, under the due process clause of the Iowa Constitution, a requirement that police must ask clarifying questions when faced with an equivocal request to consult with counsel . . . . Requiring law enforcement personnel . . . to ask such clarifying questions [is an issue] that may be argued both pro and con as [a] matter[] of public policy. We are confident, however, that such procedures are in no way mandated by any provision in the Iowa Constitution. We reject Morgan's contention that they are.

*Id.* at 609. At the time we decided *Morgan*, Hawaii had already decided to require clarifying questions, and several law review articles had been published criticizing *Davis*. *See State v. Hoey*, 881 P.2d 504, 523 (Hawaii 1994) (holding the Hawaii Constitution requires police to "cease all questioning or seek non-substantive clarification of the suspect's request" when the suspect "makes an ambiguous or equivocal request for counsel during custodial interrogation"); Tom Chen, Davis v. United States: *"Maybe I Should Talk to a Lawyer" Means Maybe* Miranda *is Unraveling*, 23 Pepp. L. Rev. 607 (1996); Constantine Athanas, *Equivocal Requests for an Attorney: Caveat Emptor Comes to the Fifth Amendment*, 45 Emory L. J. 673 (1996).

In his appellate brief, Effler argues the right to counsel under article I, section 10 of the Iowa Constitution is "applicable under the due process provision of article I, section 9 of the Iowa Constitution." *See* Iowa Const. art. I, § 10. However, the right to counsel under article I, section 10 is not applicable to Effler's situation. Under article I, section 10 of the Iowa Constitution, "In all criminal prosecutions . . . the accused shall have a right . . . to have the assistance of counsel." This provision of the Iowa Constitution is substantially the same as the Sixth Amendment of the United States Constitution. *Compare* Iowa Const. art. I, § 10, *with* U.S. Const. amend. VI; see also *Doerflein v. Bennett*, 259 Iowa 785, 790, 145 N.W.2d 15, 18 (1966) (stating "[s]ection 10 of Article I of the Iowa Constitution contains substantially the same provisions" as the Sixth Amendment). Cases involving whether the police must ask clarifying questions when a suspect equivocally invokes his Fifth Amendment right to counsel have been decided under the Fifth Amendment and its state equivalents, not the Sixth Amendment and its state equivalents. *See, e.g., Hoey*, 881 P.2d at 523; *State v. Risk*, 598 N.W.2d 642, 647 (Minn. 1999).

We have determined that the Sixth Amendment attaches upon the initiation of adversarial criminal proceedings, generally by formal charge, arraignment, preliminary hearing, information, or indictment. *State v. Peterson*, 663 N.W.2d 417, 426 (Iowa 2003); *see also State v. Johnson*, 318 N.W.2d 417, 432 (Iowa 1982). In Iowa, an information or indictment must be filed in order to prosecute indictable offenses. Iowa R. Crim. P. 2.4 (2). " 'An arrest by itself, with or without a warrant, falls far short of an official accusation by the state against the arrested individual.' " *Johnson,* 318 N.W.2d at 434 (quoting *Lomax v. Alabama*, 629 F.2d 413, 416 (5th Cir. 1980)). The right to counsel under the Iowa Constitution

also attaches after the accused has received counsel. *See State v. Newsom,* 414 N.W.2d 354, 358–59 (Iowa 1987).

As article I, section 10 of the Iowa Constitution is not applicable to Effler's situation, and as we have already ruled that article I, section 9 does not require police to ask clarifying questions, Effler was not denied effective representation of counsel when his attorney failed to challenge his statements under the Iowa Constitution. I would affirm the judgment of the district court.

**IV. Conclusion.**

I would vacate the court of appeals and affirm the trial court. Effler's request for counsel was conditional, and he did not unambiguously and unequivocally invoke his Fifth Amendment right to counsel.

Ternus, C.J., and Cady, J., join this opinion.

**WIGGINS, Justice.**

I would write to reverse the trial court. We have said:

> The requirement that police officers advise suspects of their *Miranda* rights is more than a mere procedural nicety or legal technicality. The police must take the giving of the *Miranda* warnings seriously and must not presume that suspects "are already aware of what rights they possess prior to being questioned."

*State v. Ortiz*, 766 N.W.2d 244, 251 (Iowa 2009) (quoting *United States v. San Juan-Cruz*, 314 F.3d 384, 389 (9th Cir. 2002)) (citation omitted). The opinion writing to affirm the district court decision applies *Miranda* as a mere formality simply relying on cases from other jurisdictions where similar language was used by a defendant in requesting counsel. That is how it made this a simple case. Such an approach fails in my view to apply the proper analysis under the specific facts of this case— whether "a reasonable officer in light of the circumstances would have understood" the statement to be a request for an attorney. *Davis v. United States*, 512 U.S. 452, 459, 114 S. Ct. 2350, 2355, 129 L. Ed. 2d 362, 371 (1994). A proper analysis leads to only one conclusion: this court should reverse the district court decision, suppress Effler's statements, affirm the court of appeals, and order a new trial.

**I. Analysis.**

**A. Fifth Amendment Right to Counsel.** In *Davis*, the United States Supreme Court explored what a suspect must do to invoke his right to counsel in a custodial setting under the Federal Constitution. There the Supreme Court held a suspect must unambiguously request the assistance of counsel to trigger the right to counsel under *Edwards v. Arizona*, 451 U.S. 477, 484–85, 101 S. Ct. 1880, 1885, 68 L. Ed. 2d 378, 386 (1981). *Id.* The test of whether a suspect has unambiguously asserted his right to counsel is whether "a reasonable officer *in light of*

*the circumstances* would have understood" the statement to be a request for an attorney. *Id.* (emphasis added).

Although I have no quarrel with the facts as set forth in the opinion written to affirm the district court, I believe that opinion omits other important facts that shed light on the circumstances surrounding Effler's statement. Prior to interviewing Effler, the detective went to the library to interview the witnesses to get an idea of what had transpired there. By the time he began interviewing Effler, the detective clearly knew from his investigation that the witnesses had found Effler shirtless, kneeling next to the naked two-year old in the locked bathroom at the library. When he began the interview, the detective also knew Effler was a registered sex offender who would be booked for the crimes he committed at the library and sent to jail as soon as the interrogation ended.

In determining whether the State has violated a person's federal constitutional rights, a reviewing court cannot simply analyze a few words out of context and search for ambiguity through linguistic acrobatics. As anybody who speaks the English language knows, just about any word, or group of words, in isolation, may be made to look ambiguous. Thus, under *Davis*, the court must ask—whether a reasonable police officer, *in light of the circumstances*, would believe that a suspect unequivocally requested the assistance of counsel.

The State claims Effler's request, "I do want a court-appointed lawyer. . . . If I go to jail," was conditional and did not constitute a clear and unequivocal request for a lawyer. Although the United States Supreme Court has not addressed the issue of whether a conditional request such as Effler's constitutes a clear and unequivocal request for a lawyer, the Supreme Court of California has addressed conditional

requests for counsel under the *Davis* analysis. *People v. Gonzalez*, 104 P.3d 98, 105–06 (Cal. 2005).

In *Gonzalez*, the detectives questioned the defendant concerning the murder of a police officer. *Id.* at 101. After waiving his rights, the defendant denied he shot the officer. *Id.* The detectives then asked the defendant if he would take a lie detector test to reconcile the defendant's denial with the evidence the defendant was involved with the shooting. *Id.* At that point, the defendant said,

> "That um, one thing I want to ask you to that, if for anything you guys are going to charge me I want to talk to a public defender too, for any little thing. Because my brother-in-law told me that if they're trying to charge you for this case you might as well talk to a public defender and let him know cause they can't [Untranslatable]."

*Id.* at 102. In response to this statement, a detective explained to the defendant that they were going to book him for the murder and continue to investigate the case. *Id.* If the investigation showed the defendant was not involved in the murder, the detective would let the defendant go. *Id.* Another detective told the defendant, " '[A]n arrest is not a prosecution; you hear me?' " *Id.* The defendant responded, " 'Yes, sir.' " *Id.* The next day the defendant admitted he shot the officer. *Id.*

The defendant moved to suppress the statements he made regarding shooting the officer because the detectives took his statements in violation of his *Miranda* rights. *Id.* at 102–03. At the suppression hearing, the detectives testified they understood the defendant's reference to a public defender to mean the defendant's brother-in-law told him "if 'he was charged with a crime, did he want to have the services of a public defender.' " *Id.* at 103. The detectives further testified that they explained to the defendant the distinction of being arrested and being charged with a crime. *Id.* None of the detectives

interpreted the defendant's statement as a request for an attorney, but rather the defendant's reaffirmance that he had a right to an attorney if he wanted one. *Id.*

The California court found the defendant's request to be conditional; "he wanted a lawyer *if* he was going to be *charged.*" *Id.* at 106. The court explained,

> The conditional nature of the statement rendered it, at best, ambiguous and equivocal because a reasonable police officer in these circumstances would not necessarily have known whether the condition would be fulfilled since, as these officers explained, the decision to charge is not made by police. Confronted with this statement, a reasonable officer would have understood only that "the suspect *might* be invoking the right to counsel," which is insufficient under *Davis* to require cessation of questioning.

*Id.* (quoting *Davis*, 512 U.S. at 459, 114 S. Ct. at 2355, 129 L. Ed. 2d at 371). Moreover, the California court considered the defendant's lack of a request for counsel after the detectives explained to him the difference between being arrested and being charged in deciding the defendant did not unequivocally request the immediate presence of an attorney before he would answer any more questions. *Id.*

Applying the *Davis* and *Gonzalez* analysis to the facts of the present case, I would find a reasonable police officer would believe Effler's words constituted an unequivocal request for assistance of counsel in light of the circumstances. The first significant circumstance in this case is the fact that Effler and the detective were involved in a conversation. They were not exchanging pithy telegrams. As anyone who has ever read a transcript of their own oral conversation with another person knows, we use language patterns in oral communications that we would never consider using in written form. In particular, oral communication is ordinarily more polite and less emphatic than is the

case with written communication. Further, in oral conversations, participants tend to incorporate what the other party has previously said when continuing the conversation as a sign of politeness, respect, and understanding.

The second significant circumstance is the nature of the conversation between the detective and Effler just prior to Effler's statement requesting a court-appointed attorney. Only a few seconds before Effler made his request he asked the detective if he was going to be released. In response to that question the detective told Effler that in all likelihood he would spend a night in jail on an intoxication charge. It would have been obvious to a reasonable police officer that Effler used this fresh piece of information to further the conversation when he stated, "I do want a court appointed lawyer. . . . If I go to jail."

No reasonable detective would believe that Effler, through the added words "If I go to jail," was expressing the view that a court-appointed attorney would provide more effective assistance in the confines of a jail cell than in the police interrogation room. Instead, a reasonable police officer, in light of the circumstance of the officer's previous statement about jail, would believe that Effler was just building on the prior police comment when he requested the assistance of counsel as part of his oral conversation.

*Gonzalez* supports our finding that Effler had effectively invoked his right to counsel. In *Gonzalez*, the court held that the purportedly conditional request of the defendant was ambiguous because a reasonable police officer would not have known if the State was going to charge the defendant with murder. *Id.* In this case, however, the detective told Effler that he was going to be held in jail at least overnight. Effler was responding to a statement made by the officer, not introducing

ambiguity, when he added the phrase "If I go to jail." Additionally, at the time Effler made the statement, the detective knew that after the interview he was going to book Effler and send him to jail for the crimes Effler committed at the library. Unlike in *Gonzalez*, the interrogating officer knew that Effler was going to jail. Accordingly, I would find the district court erred in failing to suppress all the statements made by Effler after he requested the assistance of counsel.

**B. Harmless Error.** The State contends that even if the district court should have granted Effler's motion to suppress, the district court committed harmless error when it denied the motion. To establish harmless error when a defendant's constitutional rights have been violated, the State must " 'prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.' " *State v. Walls*, 761 N.W.2d 683, 686 (Iowa 2009) (quoting *State v. Peterson*, 663 N.W.2d 417, 431 (Iowa 2003)).

The jury found Effler guilty of kidnapping in the first degree. To prove Effler guilty of kidnapping in the first degree, the State must show "the person kidnapped, as a consequence of the kidnapping, suffers serious injury, or is intentionally subjected to torture or sexual abuse." Iowa Code § 710.2 (2005). Regarding the element that a defendant intentionally subjects a person to torture or sexual abuse, the evidence at trial was that the child was discovered naked in the bathroom and the defendant did not have his shirt on. While the child was confined in the bathroom, witnesses heard the scream of a child.

After the incident, the medical director of the Regional Child Protection Center examined the child. Although the comprehensive sexual abuse assessment did not reveal that the child was sexually abused, it did reveal redness on her genitalia. The examiner testified

irritation from urine, bladder infection, diaper rash, irritation from wearing a diaper, or trauma could have caused the redness. She was unable to determine the cause of the redness.

This testimony, without Effler's statements, may have been enough to convict Effler of kidnapping in the first degree. However, I cannot say that the State proved beyond a reasonable doubt that Effler's improperly admitted confession that he took off her clothes, licked and rubbed her genitalia, masturbated, and tried to put his penis inside her vagina did not contribute to the verdict obtained. Thus, I would hold Effler is entitled to a new trial.

**C. Ineffective Assistance of Counsel.** Effler alleges he received ineffective assistance of counsel for his counsel's failure to challenge the admissibility of his statements under the Iowa Constitution. I need not reach this issue because I would find the violation of his Fifth Amendment rights under the Federal Constitution requires that he receive a new trial.

**II. Conclusion.**

I would reverse the district court and affirm the court of appeals decision. Although Effler's request for counsel might, if taken out of context, be viewed as conditional, I believe it must be viewed as unequivocal when considered in light of the circumstances in which it was expressed. As the detective had told Effler he was going to jail, and the detective knew he would send Effler to jail as soon as the interrogation ended for the crimes he committed at the library, the court should conclude Effler invoked his Fifth Amendment right to counsel.

Hecht and Appel, JJ., join this opinion.

**APPEL, Justice (specially concurring).**

I concur with the opinion of Justice Wiggins in this case. I write separately to emphasize the need for criminal counsel to explore thoroughly the possibility that this court will approach the Iowa Constitution in a different fashion than the United States Supreme Court approaches parallel provisions of the Federal Constitution. Indeed, this case demonstrates why this court should exercise its independent judgment under the Iowa Constitution and not necessarily follow the majority of the United States Supreme Court.

Thirty years ago, Justice William Brennan, Jr., wrote a seminal article in the pages of the Harvard Law Review. *See* William J. Brennan, Jr., *State Constitutions and the Protection of Individual Rights*, 90 Harv. L. Rev. 489 (1977). In that article, Justice Brennan urged the development of a body of state constitutional law independent of federal interpretation. *Id.* at 502. Since the article's publication, a large body of state constitutional law has emerged in which state courts have charted an independent path in interpreting provisions of state constitutions that are identical or similar to provisions of the Federal Constitution. *See, e.g.*, Hans A. Linde, *The State and the Federal Courts in Governance: Vive la Différence!*, 46 Wm. & Mary L. Rev. 1273 (2005); Robert K. Fitzpatrick, *Neither Icarus Nor Ostrich: State Constitutions as an Independent Source of Individual Rights*, 79 N.Y.U. L. Rev. 1833 (2004); William J. Brennan, Jr., *The Bill of Rights and the States: The Revival of State Constitutions as Guardians of Individual Rights*, 61 N.Y.U. L. Rev. 535 (1986).

This court in recent years has been willing to forge its own course on state constitutional interpretation. For example, we have refused to follow the Supreme Court in adopting a good faith exception to the exclusionary rule in the context of an illegal search under the Iowa

Constitution. *See State v. Cline*, 617 N.W.2d 277, 285–93 (Iowa 2000), *overruled on other grounds by State v. Turner*, 630 N.W.2d 601, 606 n.2 (Iowa 2001). *Cline* represents an unmistakable message to defendants and their lawyers that this court is prepared to depart from the precedents of the Supreme Court on major issues of constitutional law. This message of independence was reinforced in *Racing Association of Central Iowa v. Fitzgerald*, 675 N.W.2d 1, 4–5 (Iowa 2004) [hereinafter *RACI II*], when we refused to follow a unanimous opinion of the Supreme Court regarding the federal Equal Protection Clause when we were called upon to apply the equal protection clause under our state constitution. We have recently stated in plain terms that we jealously guard our right and duty to differ in appropriate cases from the interpretation of federal constitutional provisions. *State v. Wilkes*, 756 N.W.2d 838, 842, n.1 (Iowa 2008).

In light of our jealously guarded right and duty to differ in our interpretation of state constitutional provisions, counsel should be attentive to the possibility that we might not follow Supreme Court precedent in cases involving the interpretation of the Iowa Constitution. Instead of following the approach of the Supreme Court, we might fashion an independent state rule based, in whole or in part, upon a dissenting opinion of the Supreme Court, upon an alternate approach utilized by other state supreme courts under state constitutional provisions similar to Iowa's, upon analysis of law found in the academic literature, or upon our collective constitutional common sense distilled from law, logic, and experience. When a defendant has a potential claim under both the United States and Iowa Constitutions, counsel should ordinarily scour these sources to determine if there is a solid legal basis for asserting an independent interpretation of the Iowa Constitution

which would be more beneficial to the accused than is available under the Federal Constitution.

In raising a constitutional claim under the state constitution, counsel should do more than simply cite the correct provision of the Iowa Constitution. When fashioning an interpretation of a state constitutional provision independent of federal case law, the adjudicative process is best advanced on reasoned argument which has been vetted through the adversarial process. As a result, because of our prudential concern that the issue may not be fully illuminated without a developed record and briefing, we generally decline to consider an independent state constitutional standard based upon a mere citation to the applicable state constitutional provision. *Id.*; *In re Det. of Garren*, 620 N.W.2d 275, 280 n.1 (Iowa 2000).

This case classically illustrates the need to explore an independent analysis under the state constitution. A question lurking behind this case is whether this court would today follow the approach of *Davis v. United States*, 512 U.S. 452, 114 S. Ct. 2350, 129 L. Ed. 2d 362 (1994), in interpreting the Iowa Constitution. In *Davis*, a bare majority of the United States Supreme Court decided that law enforcement had no obligation to clarify an ambiguous request for counsel made by an accused in custody after he had provided a valid waiver of his right to counsel under *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). *Davis*, 512 U.S. at 459, 114 S. Ct. at 2355, 129 L. Ed. 2d at 371–72. The majority declined to adopt the position advocated by the Department of Justice and other law enforcement authorities that when a suspect ambiguously requests a right to counsel, law enforcement must ask clarifying questions with the sole purpose of

resolving the ambiguity. *Id.* at 461, 114 S. Ct. at 2356, 129 L. Ed. 2d at 373.

Justice Souter, joined by three colleagues, wrote a powerful dissent. He wrote that the majority approach would penalize those with poor English, those who were woefully ignorant, and those who were intimidated by the custodial setting. *Id.* at 469–70, 114 S. Ct. at 2360–61, 129 L. Ed. 2d at 378 (Souter, J., dissenting). Regarding the need for clarity, Justice Souter questioned the majority approach, noting the distinction between a clear and an ambiguous request for counsel, as this case powerfully demonstrates, is not always apparent. *Id.* at 474 n.7, 114 S. Ct. at 2363 n.7, 129 L. Ed. 2d at 381 n.7. Justice Souter made the common sense observation that if an ambiguity did emerge, it should be resolved not by a police officer, but by the person "most competent to resolve the ambiguity," namely, the suspect himself. *Id.* at 475, 114 S. Ct. at 2363, 129 L. Ed. 2d at 381–82.

This court followed the majority approach in *Davis* in interpreting the Iowa Constitution in *State v. Morgan*, 559 N.W.2d 603, 608 (Iowa 1997). I question *Morgan*'s continued vitality. *Morgan* is a conclusory opinion with no analysis of the underlying issue. It rests solely upon the authority of *Davis*, a 5–4 decision. Further, it was decided at a time when this court routinely adopted federal constitutional precedent as a basis for decisions under the Iowa Constitution. Since *Morgan* was decided, this court has demonstrated in *Cline* and *RACI II* a greater willingness to depart from federal precedents on important state constitutional questions than it had shown in the past.

Further, a large and growing body of academic and judicial writing has emerged sharply critical of *Davis*. The literature suggests that the approach in *Davis* is inconsistent with *Miranda*, lacks clarity, makes

important constitutional rights turn on linguistic finery, employs selective literalism not found in other branches of criminal law, and disproportionately impacts members of lower socioeconomic classes. *See, e.g.*, David Aram Kaiser & Paul Lufkin, *Deconstructing* Davis v. United States*, Intention and Meaning in Ambiguous Requests for Counsel*, 32 Hastings Const. L.Q. 737, 756–58 (2005); Peter M. Tiersma & Lawrence M. Solan, *Cops and Robbers: Selective Literalism in American Criminal Law*, 38 Law & Soc'y Rev. 229, 249 (2004); Wayne D. Holly, *Ambiguous Invocations of the Right to Remain Silent: A Post-*Davis *Analysis and Proposal*, 29 Seton Hall L. Rev. 558, 591 (1998).

In addition, after *Morgan* was decided, two state supreme courts refused to follow *Davis* under their respective state constitutions or common law in cogent opinions. *See State v. Risk*, 598 N.W.2d 642, 648–49 (Minn. 1999); *State v. Chew*, 695 A.2d 1301, 1318 (N.J. 1997). Some courts, while unwilling to confront the majority opinion in *Davis* directly, have held that *Davis* applies only where an accused has first made a valid waiver, and then sought to retract it. *See, e.g., United States v. Cheely*, 36 F.3d 1439, 1448 (9th Cir. 1994); *State v. Collins*, 937 So. 2d 86, 92 (Ala. Crim. App. 2005); *Freeman v. State,* 857 A.2d 557, 572–73 (Md. Ct. Spec. App. 2004); *State v. Leyva,* 951 P.2d 738, 745 (Utah 1997).

Counsel below did not claim that Effler's interrogation violated the state constitution, but relied solely on the applicable provisions of the federal constitution. As a result, the question on appeal is whether the failure to rely on the state constitution amounts to ineffective assistance of counsel. In order to establish ineffective assistance of counsel, Effler must show that his lawyer failed to perform an essential duty and that he was prejudiced by the inadequate representation. *State v. Lane*, 743

N.W.2d 178, 183 (Iowa 2007). While there is a strong presumption of counsel's competence, *Osborn v. State*, 573 N.W.2d 917, 922 (Iowa 1998), that presumption is not absolute or irrebutable.

In considering whether counsel's failure to raise an issue amounts to ineffective assistance, we have stated that counsel is not required to be a "crystal gazer" to predict changes in law. *State v. Schoelerman*, 315 N.W.2d 67, 72 (Iowa 1982). At the same time, however, we have also stated that the test of ineffective assistance of counsel "is whether a normally competent attorney could have concluded that the question . . . was not worth raising." *Id.* We used the latter standard in *State v. Graves*, 668 N.W.2d 860, 881–82 (Iowa 2003), to determine that counsel should have challenged prosecutorial use of "liar" and similar phraseology to brand a criminal defendant notwithstanding prior unfavorable precedent of this court. Although there was no direct authority on the precise issue to be overcome, as in this case, *Graves* stands for the proposition that a competent lawyer must stay abreast of legal developments.

It appears that there are three members of this six-member court who would decline to find that counsel was ineffective for failing to challenge the continued vitality of *Morgan* or to distinguish *Morgan* on the ground that it applies only where law enforcement first obtains a valid waiver of *Miranda* rights. As a result, these three members do not reach the issue of whether *Morgan* was rightly decided or can be distinguished from this case. In light of this unusual posture, I do not specifically determine whether counsel's failure to seek to overturn or distinguish *Morgan* amounts to ineffective assistance. I regard it sufficient to simply state that I am generally committed to the values inherent in *Miranda* and regard *Morgan* as wobbly precedent that may

not survive a direct attack in light of my review of Justice Souter's dissent in *Davis*, the validity of alternate approaches by other state supreme courts that have considered the issue, the academic literature that is sharply critical of *Davis*, the evolving precedent of this court departing from United States Supreme Court jurisprudence, and my view of the proper constitutional balance between the needs of the State and the rights of the accused.

Until the issue of the continued vitality of *Morgan* is resolved, law enforcement might consider Justice O'Connor's suggestion in *Davis* that even if clarification of ambiguous requests for counsel is not constitutionally required, follow-up questioning designed solely to resolve any ambiguity before questioning continues represents good policy. *Davis*, 512 U.S. at 461, 114 S. Ct. at 2356, 129 L. Ed. 2d at 373.

Further, implementation of a policy of clarifying ambiguous requests will lessen the risk of a reversal should a majority of this court ultimately abandon the conclusory acceptance of *Davis*, overrule *Morgan*, develop its own independent approach that rejects the majority position in *Davis*, and require law enforcement officers to clarify ambiguous invocations of constitutional rights by accuseds in police custody.

Wiggins and Hecht, JJ., join this opinion.