# IN THE COURT OF APPEALS OF IOWA

No. 13-1233
Filed December 24, 2014

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**KIRK RILEY LEVIN,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Sac County, Timothy J. Finn, Judge.


        A defendant appeals his convictions for first-degree murder and third-degree kidnapping. **AFFIRMED.**


        Mark C. Smith, State Appellate Defender, and Melinda J. Nye, Assistant Appellate Defender, for appellant.

        Thomas J. Miller, Attorney General, Sheryl A. Soich, Assistant Attorney General, Ben Smith, County Attorney, and Douglas Hammerand, Assistant County Attorney, for appellee.


        Heard by Vogel, P.J., and Vaitheswaran and Potterfield, JJ.

**VOGEL, P.J.**

Kirk Levin appeals his convictions for first-degree murder and third-degree kidnapping.  Although Levin requests *State v. Morgan*, 559 N.W.2d 603 (Iowa 1997), be overturned, we are not at liberty to do so with Iowa supreme court precedent.  We conclude the district court correctly determined Levin's statement, "I might (inaudible) myself a lawyer," was inadequate to invoke the requirement that the officers stop their interrogation and the court properly denied his motion to suppress.  In light of this conclusion, we do not address the harmless error arguments raised by the parties.  We affirm Levin's convictions.

## I.      Background Facts & Proceedings

On January 3, 2013, Gary Schramm stopped to help a car that was stuck in a ditch in rural Sac County.  A woman, J.V., ran from the car, stating the driver, Levin, had kidnapped her.  When J.V. approached Schramm for assistance, Levin ran away.  He was apprehended a few hours later and arrested.

Levin signed a written waiver of his Miranda rights.  During questioning, the following exchange occurred:

> Q. What happened with [J.V.]?  A.  I don't know what happened, why it happened.
> Q. What's that? A.  I don't know why it happened.
> Q. Well, tell me what happened.  A.  I don't think it is smart for me to do that.  I might (inaudible) myself a lawyer.

The officers proceeded with questioning Levin.  Eventually, Levin stated he was acquainted with J.V.  He stated he had gone to her apartment that morning and asked her for a ride because he was having car trouble, which was a pretext to get her to come with him.  Levin had J.V. drive him to the farmstead where he was living with his mother.  He took J.V. into a shed, where he tied her hands,

and then put her into her vehicle. He later admitted he had a fantasy about having sex with somebody while they were tied up or kidnapped. Shortly after he left the farmstead in J.V's vehicle, he drove the car off the road and was stuck in a ditch when the occupants of a passing vehicle stopped to offer assistance.

After the first interrogation of Levin, officers went out to the farmstead and found the body of Levin's mother, Marilyn Schmitt, in the house. She had been stabbed eighty-eight times and strangled with a leather belt. In the trunk of Schmitt's vehicle officers found two garbage bags filled with blood-stained clothing and towels. Schmitt's DNA was discovered on these items. Additionally, bloodstains containing Levin's DNA were discovered on the driver's side window of the vehicle. His DNA was also detected in bloodstains on the outside screen door handle of the house. The knife blade used to kill Schmitt was found in a garbage bag in the vehicle.

After the discovery of Schmitt's body, officers again informed Levin of his *Miranda* rights and questioned him about what had happened. Levin stated he and his mother had been the only ones in the home. After a period of discussion, when an officer stated, "But you know it was you," Levin responded, "It had to have been." He made a written statement, "I had to have killed my mother. I can't explain why, or what I was thinking when I did it. I remember walking into her room. I remember choking her."

Levin was charged with murder in the first degree and kidnapping in the third degree. He filed a motion to suppress, claiming that during the first interrogation he had invoked his constitutional right to counsel and all of his subsequent statements should be suppressed. After a hearing, the district court

denied the motion to suppress. The court found Levin's statement, "I might (inaudible) myself a lawyer," did not rise to the level of being an unambiguous and unequivocal request for a lawyer. The court determined Levin's statement was inadequate to invoke the requirement that the officers stop their interrogation.

The case proceeded to trial and a jury found Levin guilty of first-degree murder and third-degree kidnapping. The court denied his motion in arrest of judgment and motion for new trial. Levin was sentenced to life in prison on the murder charge and ten years in prison on the kidnapping charge, to be served concurrently. He now appeals his convictions.

## II.    Overruling Precedent

Levin asks to overturn the holding of *State v. Morgan*, 559 N.W.2d 603 (Iowa 1997). He asserts the Iowa Constitution should be interpreted to provide that officers be required to ask clarifying questions or cease questioning a suspect when the person makes an equivocal request for counsel during custodial interrogation. This court, however, is not at liberty to overrule controlling Iowa supreme court precedent. *State v. Beck*, 854 N.W.2d 56, 64 (Iowa Ct. App. 2014). Therefore, we do not further address his request.

## III.    Request for Counsel

In the alternative, Levin argues he made a sufficiently clear request for an attorney and officers should have ceased questioning him. He asserts his statement, "I might (inaudible) myself a lawyer," would have been considered by a reasonable officer as a request for counsel. He contends that taken in context with his statement that it would not be very smart for him to tell the officers what

happened, his statement was a request for an attorney. Levin asserts that all of his statements made after he requested an attorney should be suppressed. Our review of this constitutional issue is de novo. *See State v. Lowe*, 812 N.W.2d 554, 566 (Iowa 2012).

The United States Supreme Court has stated:

Invocation of the *Miranda* right to counsel "requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney." But if a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel, our precedents do not require the cessation of questioning.
Rather, the suspect must unambiguously request counsel. As we have observed, "a statement either is such an assertion of the right to counsel or it is not." Although a suspect need not "speak with the discrimination of an Oxford don," he must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney. If the statement fails to meet the requisite level of clarity, *Edwards* [*v. Arizona*, 451 U.S. 477, 484-85 (1981),] does not require that the officers stop questioning the suspect.
We decline petitioner's invitation to extend *Edwards* and require law enforcement officers to cease questioning immediately upon the making of an ambiguous or equivocal reference to an attorney.

*Davis v. United States*, 512 U.S. 452, 459 (1994) (citations omitted). The Court concluded the petitioner's statement, "Maybe I should talk to a lawyer," was not an unambiguous request for counsel. *Id.* at 462.

Our Iowa supreme court applied the ruling in *Davis* in the case of *Morgan*, 559 N.W.2d at 608, where the defendant stated he "might need a lawyer." The court found this statement was analogous to the statement found in *Davis*.

*Morgan*, 559 N.W.2d at 608. The court concluded Morgan did not successfully invoke his right to counsel. *Id.*

This issue was again raised in *State v. Effler*, 769 N.W.2d 880, 884 (Iowa 2009), where the defendant stated he wanted a lawyer "if I go to jail." Our supreme court was evenly split, and thus, the decision of the district court was affirmed as a matter of law. *Effler*, 769 N.W.2d at 882; *see* Iowa Code § 602.4107 (providing that when the Iowa supreme court is equally divided, "the judgment of the court below shall stand affirmed, but the decision of the supreme court is of no further force or authority"). Thus, *Effler* does not provide precedent for this court to vary from the *Morgan* standard.[1] *See Dier v. Peters*, 815 N.W.2d 1, 6 (Iowa 2012) (noting an order affirming a decision by operation of law was a nonprecedential order).

In following the precedent found in *Davis* and *Morgan*, we can conclude Levin's statement, "I might (inaudible) myself a lawyer," was not an unambiguous request for counsel. Rather, it is similar to the statements found in *Davis* and *Morgan* that were determined to be insufficient to invoke a defendant's right to counsel. *See Davis*, 512 U.S. at 462; *Morgan*, 559 N.W.2d at 608. We conclude the district court correctly determined Levin's statement was inadequate to invoke the requirement that the officers stop their interrogation and the court properly denied his motion to suppress.

---

[1] Levin points out a special concurrence in *Effler*, 769 N.W.2d at 896-97 (Appel, J., specially concurring), questioned the continued vitality of *Morgan* and asserted it was "wobbly precedent that may not survive a direct attack." As noted above, however, *Effler* has no force or authority as precedent because the Iowa supreme court was evenly split. Iowa Code § 602.4107; *Dier*, 815 N.W.2d at 6.

### IV.    Harmless Error

In addition to asserting he was denied his constitutional right to counsel when officers continued their questioning of him after he stated, "I might (inaudible) myself a lawyer," Levin claims he was prejudiced by the admission of the statements.  He claims the admission of his statements was not harmless error because he was prejudiced by the statements.  *See State v. Peterson*, 663 N.W.2d 417, 434 (Iowa 2003).  Because we have determined the district court properly concluded Levin's statements after he made an equivocal statement regarding counsel were admissible, there is no need for us to address the harmless error arguments made by the parties.

We conclude the district court properly denied Levin's motion to suppress. We affirm his convictions for first-degree murder and third-degree kidnapping.

**AFFIRMED.**