STATE of Iowa, Appellant,

v.

James Milton NEWSOM, Appellee.

No. 86–1297.

Supreme Court of Iowa.

Oct. 21, 1987.

Thomas J. Miller, Atty. Gen., Richard J. Bennett, Asst. Atty. Gen., and Lawrence J. Schulz, Co. Atty., for appellant.

John J. Wolfe, Jr., and Robert J. McGee of McGee, Schoenauer & Wolfe, Clinton, for appellee.

Considered by HARRIS, P.J., and LARSON, SCHULTZ, CARTER, and LAVORATO, JJ.

SCHULTZ, Justice.

We granted discretionary review of the trial court's ruling suppressing inculpatory statements, made by the defendant, on grounds that his sixth amendment right to counsel had been violated. We affirm the trial court's ruling and remand for further proceedings.

Defendant James Milton Newsom, age 17, lived in Clinton County with his grandparents. Although defendant's parents were still living, the grandparents were his legal guardians. Thomas Petersen, a boarder in the grandparents' home, was found dead from gunshot wounds on July 24, 1985. On August 1, defendant was arrested on unrelated charges, while driving the victim's car in Amarillo, Texas. Clinton County officials were notified that defendant was in custody, and an arrest warrant charging him with the first-degree murder of Thomas Petersen was obtained and executed the same day. On August 2, Iowa Division of Criminal Investigation agent Sywassink and Clinton County Sheriff's Department officer Greenwalt arrived in Amarillo to interrogate the defendant about Petersen's death and see if he would return voluntarily to Iowa to face criminal charges.

Most of the events occurring after the officers' arrival in Amarillo are undisputed. Defendant was transported from the juvenile detention center to the Amarillo police department where an arrest warrant for first-degree murder was read to him. He was advised of his rights under the United States Constitution and Iowa juvenile law. Defendant rejected an invitation to discuss the crime and wrote on a written waiver form that he had been given, "[a]t this time I choose not to talk to my parents or the police. I wish to have a lawer (sic) present." Defendant was then taken before a Texas magistrate and again advised of his rights. He was returned to the detention center without being provided an attorney, but was not questioned. Later that evening, the Iowa officers received a call from a Texas juvenile officer informing them that defendant had indicated he wanted to talk. The officers decided to wait until morning to talk to defendant.

On August 3, the Iowa officers arrived at the detention center around 8:00 a.m. A conference call was arranged with defendant's parents and grandparents. Greenwalt testified that while Sywassink was arranging the call, defendant started talking about the case and insisted on doing so even though he was told that he didn't have to talk. Defendant was again read his *Miranda* rights.

After defendant spoke with his parents and grandparents on the telephone, a detective from the Clinton County Sheriff's Department obtained their signatures on a form consenting to defendant waiving his right to counsel. Defendant was again advised of his rights pursuant to a juvenile waiver of rights form. This time defendant signed the waiver form, indicating that he had read and understood his rights and that the waiver was not coerced.

Defendant was then taken before a second Texas judge and was again advised of his constitutional rights. Defendant requested an attorney and the judge appointed a local attorney, Phil Jordan, to represent him. Jordan arrived shortly thereafter and met with defendant privately and advised him not to talk with the Iowa officers about the crime. Jordan then asked the officers into the room so he could explain to them the understanding he had reached with defendant. He told the officers that defendant had been advised not to visit with anyone about the case until he had returned to Iowa and talked to his lawyer there. Shortly thereafter, the attorney left and the officers began interrogating defendant and obtained the admissions defendant now seeks to suppress.

Defendant's motion to suppress took a rather unusual course in this proceeding. Prior to trial, the original motion was heard and decided by a district judge other than the trial judge. Initially, the court overruled defendant's federal and state constitutional claims, but suppressed a statement made before he had talked with his parents and grandparents because of a violation of

Iowa Code section 232.11 (1985).[1] At trial, a different judge presided, and he reconsidered and granted defendant's motion to suppress his later statements, holding that defendant did not knowingly and voluntarily abandon his rights to counsel under federal and state constitutions. A mistrial was declared because the State had referred to defendant's admissions in opening statement.

The State concedes that defendant's right to counsel had attached when he made the inculpatory statements. It insists, however, that defendant waived his right to counsel. Defendant, on the other hand, insists the trial court correctly suppressed the evidence because the State failed to prove that defendant initiated the further interrogations after he requested counsel and that consequently, he could not have waived his right to counsel.

█ As the issue raises constitutional questions, our review is de novo. *See State v. Jackson*, 380 N.W.2d 420, 421 (Iowa 1986). We first address the federal question. The sixth amendment to the United States Constitution guarantees an accused the right "to have the assistance of counsel for his defence." This constitutional guarantee is designed to provide for the fair administration of our adversarial system of criminal justice by equalizing the imbalance between the government's power and the average defendant's lack of professional legal skills. *See Maine v. Moulton*, 474 U.S. 159, 106 S.Ct. 477, 483–84, 88 L.Ed.2d 481, 491 (1985) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 462–63, 58 S.Ct. 1019, 1022, 82 L.Ed. 1461, 1465 (1938)); *State v. Nelsen*, 390 N.W.2d 589, 591 (Iowa 1986).

█ Although the fifth amendment to the United States Constitution is not directly in issue on appeal, it also guarantees a criminal suspect, in custody, the right to counsel. *See Miranda v. Arizona*, 384 U.S. 436, 469–70, 86 S.Ct. 1602, 1625–26, 16 L.Ed.2d 694, 721 (1966). While the two amendments serve different purposes, the right to counsel under the fifth amendment has a direct nexus to the sixth amendment issue now before us.

█ The fifth amendment protection against self-incrimination requires the police to notify a suspect of the right to counsel and to cut off interrogation once the suspect invokes the right. *Id.* at 471–74, 86 S.Ct. at 1626–28, 16 L.Ed.2d at 722–23. The invocation of the right to counsel in a fifth amendment setting is a significant event; absent counsel further interrogation may not occur unless the accused initiates the subsequent conversation. *Edwards v. Arizona*, 451 U.S. 477, 484–85, 101 S.Ct. 1880, 1884–85, 68 L.Ed.2d 378, 386 (1981). In the event the police initiate subsequent interrogation, there can be no valid waiver of counsel even though the accused is advised of his constitutional right and acquiesces in the questioning. *Id.* at 484, 101 S.Ct. at 1884–85, 68 L.Ed.2d at 386; *Oregon v. Bradshaw*, 462 U.S. 1039, 1043, 103 S.Ct. 2830, 2833–34, 77 L.Ed.2d 405, 411 (1983). An accused initiates further interrogation by manifesting "a willingness and a desire for a generalized discussion about the investigation." *Bradshaw*, 462 U.S. at 1045–46, 103 S.Ct. at 2835, 77 L.Ed.2d at 412.

In *Michigan v. Jackson*, 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986), the Supreme Court extended this fifth amendment protection provided by *Edwards* to sixth amendment cases. The Court reasoned:

Just as written waivers are insufficient to justify police-initiated interrogation af-

---

1. Section 232.11 provides:
    1. A child shall have the right to be represented by counsel ...:
        a. From the time the child is taken into custody for any alleged delinquent act that constitutes a serious or aggravated misdemeanor or felony under the Iowa criminal code, and during any questioning thereafter by a peace officer or probation officer.
        ....

2. ... The waiver by a child who is at least sixteen years of age is valid only if a good faith effort has been made to notify the child's parent, guardian, or custodian that the child has been taken into custody and of the alleged delinquent act for which the child has been taken into custody, the location of the child, and the right of the parent, guardian, or custodian to visit and confer with the child.

ter the request for counsel in a Fifth Amendment analysis, so too they are insufficient to justify police-initiated interrogations after the request for counsel in a Sixth Amendment analysis.

.... We thus hold that, if police initiate interrogation after a defendant's assertion, at an arraignment or similar proceeding, of his right to counsel, any waiver of the defendant's right to counsel for that police-initiated interrogation is invalid.

*Jackson*, 475 U.S. at 625–636, 106 S.Ct. at 1410–11, 89 L.Ed.2d at 642 (footnote omitted).

██ Our own cases have likewise addressed the right to counsel issue. The State has a heavy burden to prove an intentional relinquishment or abandonment of a known right or privilege. *Nelsen*, 390 N.W.2d at 592 (citing *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461, 1466 (1938)); *State v. Johnson*, 318 N.W.2d 417, 435 (Iowa), *cert. denied*, 459 U.S. 848, 103 S.Ct. 106, 74 L.Ed.2d 95 (1982). In evaluating the record, we indulge every reasonable presumption against waiver. *Nelsen*, 390 N.W.2d at 592. Once the sixth amendment right to counsel attaches and is invoked, the State may not attempt to elicit incriminating statements from the defendant absent counsel or a valid waiver. *Id.*

We now turn to the present case. Certain facts are undisputed. The parties agree that after invoking his right defendant met with his court-appointed attorney, Phil Jordan. Jordan, first privately and then in the presence of the officers, advised defendant not to discuss matters with the police until he had returned to Iowa and consulted an attorney there. In response, special agent Sywassink indicated in defendant's presence that the ultimate decision to talk was the defendant's. While the attorney did not disagree, he again advised defendant that it would not be a good idea to talk to the officers. We also believe Jordan's testimony that before he left defendant he had reached an understanding with defendant that he should not talk with anyone about his case. Soon after Jordan

left, and before defendant was returned to the detention center, defendant was questioned by the officers and made the statements he now seeks to suppress.

██ The factual dispute involves the question of who initiated the interrogation that led to defendant's inculpatory statements. The State contends that defendant initiated further interrogation by stating he would talk to the officers about "some things." Agent Sywassink testified that this statement took place while attorney Jordan was still present. Officer Greenwalt's testimony, however, indicated that Jordan left before defendant said that he would talk. We find that defendant made this statement after his attorney had left the police station. When Sywassink was questioned concerning the initiation of the conversation, he testified as follows:

Q. How did that come up in the conversation? A. ... I said to Jim, "Okay. Mr. Jordan has advised you. You requested that he be here, but that the ultimate decision to talk to us is up to you, Jim, and that nobody can make that decision but yourself."

....

Q. What happened next? A. At that point Jim said—well, first he thought for a little bit, and then he said that he would talk to us about "some things."

We find the State has failed to meet its heavy burden of proving that defendant initiated the further interrogation. Rather, the evidence shows that agent Sywassink initiated it.

██ The equalization provided by the sixth amendment is lost if the police are allowed to continue interrogation, absent counsel, after the right has been invoked. Once a defendant's right to counsel has attached and is invoked, the State may not undermine counsel's representation of the accused. The Supreme Court has stated:

The Sixth Amendment guarantees the accused, at least after the initiation of formal charges, the right to rely on counsel as a "medium" between him and the State. As noted above, this guarantee includes the State's affirmative obligation not to act in a manner that cir-

cumvents the protections accorded the accused by invoking this right. The determination whether particular action by state agents violates the accused's right to the assistance of counsel must be made in light of this obligation.

*Moulton,* 474 U.S. at 176, 106 S.Ct. at 487, 88 L.Ed.2d at 496. We conclude that the State's initiation of further interrogation of the defendant, when he was represented by counsel, affirmatively circumvented defendant's sixth amendment rights. The police-initiated interrogation of defendant nullifies any waiver that defendant may have made.

■■■■ We also agree with defendant's claims under the Iowa Constitution. Independent of our sixth amendment analysis, we find that defendant's right to counsel under the Iowa Constitution, article I, section 10, was also violated. In so doing, we rely on our own interpretation of our state constitution. We broadly construe this provision to effectuate its purpose, which was to correct the imbalance between the position of an accused and the powerful forces of the State in a criminal prosecution. An accused, especially while in custody, is vulnerable to the express or implied suggestion that cooperation with those that hold the keys is in his or her best interest. Legal counsel can equalize the positions of the criminal litigants, but only if the client is completely free to follow counsel's advice. An accused that is represented by counsel should not be subjected to a tug-of-war between defense counsel and agents of the State. We hold that our constitution prohibits agents of the State from initiating any conversations or dealings with an accused concerning the criminal charge on which representation of counsel has been sought. A violation of this prohibition by the State shall preclude any waiver, by an accused, of the right to counsel.

■■■■ We do not say that an accused may not voluntarily elect to forego the advice of counsel and initiate conversation with the police. However, we will impose a heavy standard of proof on the State to prove that the defendant initiated further conversations, and knowingly and intelligently relinquished the traditional benefits associated with the right to counsel. Absent this proof, the fruits of such conversations are inadmissible as evidence on behalf of the State in direct proof of its case.

In summary, we agree that the trial court correctly suppressed defendant's statements. We conclude that under both the federal and state constitutions, state agent Sywassink improperly initiated the conversations leading to defendant's inculpatory statements in derogation of his right to be represented by legal counsel.

AFFIRMED.